**Raymond GRAHAM, Appellant,**

v.

**Vernell R. ROBERTS.**

**No. 23290.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 14, 1970.

Decided Oct. 12, 1970.

Mr. John A. Shorter, Jr., Washington, D. C., for appellant.

Mr. Walter J. Murphy, Jr., Washington, D. C., with whom Mr. John L. Ridge, Jr., Washington, D. C., was on the brief, for appellee.

Before WRIGHT, MacKINNON and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

Appellant Graham brought an action for malpractice against appellee Roberts, a local dentist, in which the jury returned a verdict in favor of appellant for $10,668.45. On motion for judgment non obstante verdicto, the District Court granted judgment for appellee on the ground there was not a sufficient showing of proximate cause by the appellant. Finding that the jury's verdict was sufficiently well grounded in the evidence, we reverse the District Court's judgment and reinstate the verdict of the jury.

The appellant Graham, a patient of the appellee Roberts, did not allege that the dentist was negligent in extracting an upper molar, but rather that the dentist was negligent in continuing to treat a worsening condition of pansinusitis over a period of four months, instead of referring appellant's condition to a properly qualified medical specialist for treatment when appellant's condition became apparent to the appellee. The appellee's testimony showed that the removal of an upper molar created a communication channel between the mouth and the maxillary sinus. Following the extraction in May 1963, appellant developed a sinus infection which drained through the opening created by the extraction into his mouth. This sinus infection became progressively worse and by September it required surgery, 22 days' hospitalization, and six months' follow-up treatment before appellant was fully recovered. Although there was no allegation or proof of negligence in the extraction itself, uncontradicted expert opinion was that the extraction did initiate the sinus infection, a rare but not unknown occurrence. Furthermore, the infection once initiated was capable of spreading or worsening, as it was proven to have done in appellant's case. The appellee himself testified that he as a dentist would not try to cure an infected sinus, but would rather close off the connection between the mouth and the sinus and refer the patient to a specialist for proper treatment.

Salient to a determination of whether the jury's verdict for the appellant was supported by evidence of proximate cause is the testimony as to how many times and when appellant was seen by the appellee dentist at the latter's office. According to the dentist's office records he made the extraction on 14 May, at which time he noted an oral anthroum opening. Appellee testified: "I told him he had an anthroum communication and I told him sometimes you get trouble from it and sometimes you have a problem from it. I said, 'If you have problems with this, come back and let me know and we will treat it further.'" This appellant did on the following day and was given a prescription for medication. According to his memory and his office records, the appellee testified that the appellant did not return until August 17, over three months later. At that time, according to appellee, appellant had "a fistula draining at the extraction site," an "infection of the socket and an infection of the sinus." Appellee "Treat[ed] the infection at the site of the socket," but did not attempt to treat the sinus infec-

tion. The dentist also testified, "I did not tell him anything to do about his sinus, but I did tell him to return so I could check to see if the place was closing up." A week later, on August 24, he returned, and closure had been effected. It was at that time that the dentist offered to send him to a specialist for sinus trouble.

■ However, the appellant himself testified that he returned several times in June for treatment, that there was a period in July when his sinus infection was progressively getting worse when he returned for many treatments, and that he was treated in August several times by appellee. The contradictory testimony as to how many times and when the appellant had been treated by the appellee dentist—*i. e.*, over what period of time the appellee was given an opportunity to see the progression af appellant's undenied impressive sinus infection without sending the appellant patient to a properly qualified medical physician for treatment of this dangerous condition—thus raised an issue of fact for the jury. Apparently the jury resolved this contradiction in testimony in favor of the appellant, and we cannot say that this was wrong, nor do we think the District Court should have so held.

The jury could plausibly have so found, because it is clear that on 14 May the appellee dentist was aware of the opening between the mouth and the sinus

area which had been created by the tooth extraction, was aware of the problems from this which might arise, and according to his own testimony had warned appellant about this. The appellant had returned the day following complaining of pain. The appellant's admitted condition on 15 May and his admitted condition on 17 August constituted evidence from which the jury could have concluded that his testimony as to visits to the appellee dentist in the three-month interval was true, and this is not squarely contradicted by the absence of records of such in the dentist's office. There was no evidence of the completeness of the dentist's office records, who kept them under what system, which would imply that the absence of a record in the dentist's office was more reliable than the appellant's recollection. If there was a contradiction, the jury was entitled to believe whichever it chose.

■ The appellee argues that appellant's proof totally failed to establish that a timely referral would have prevented or reduced the spread of infection, or that the proper medical specialist could have obtained satisfactory results by means of treatment, which would have consequently reduced plaintiff's injuries and damages.[1] We do not think it necessary that appellant establish precisely at what point the appellee dentist should have recognized that appellant had a sinus infection and referred him to a medical specialist.[2] It was suf-

---

1. Appellee's argument inferentially raises a question as to the adequacy of proof of damages, as well as proximate cause, but since there is no direct argument on damages advanced by appellee and since the trial judge apparently did not specifically render judgment n. o. v. on this ground, we have not directly considered it here. *See* note 3, *infra*.

2. In answer to hypothetical questions, Dr. Roberts himself testified that he, as a dentist practicing in the District of Columbia, would not attempt to treat a sinus infection, but would close off the passage from the sinus to the mouth, and then refer the patient to a specialist for treatment. *Viz.*, the following colloquy:

Q. How would you go about treating [the extraction site] in a hope of curing the infected sinus?
A. I would not try to cure an infected sinus.
Q. You just said you would.
A. I would try at the site of the extraction.
Q. How would you treat the infected sinus? Do not tell me about the extraction. Tell me about the sinus.
A. I would approach it, lance it, and flush it out and put a flap up.
Q. In what way would this relieve the infection in the sinus?
A. It would not relieve the infection of the sinus but it would close up the infection of the mouth.

ficient that appellant established by evidence which the jury was authorized to believe that more than a three-month period passed, with appellant's condition steadily worsening, before the appellee dentist made such a recommendation for specialized medical treatment, and during that period of time the appellee dentist was treating appellant and aware of his worsening condition.[3] There was expert medical testimony that appellant's pansinusitis was a progressive and worsening type infection, hence it appears to us that whenever was the exact date the appellee dentist should have referred appellant, that date was considerably prior to the date at which time the appellee dentist took such action.[4]

For the reasons above stated we therefore reverse and remand for the entry of a judgment consistent with the jury's verdict.

So ordered.

---

Q. How about the infection already there?
A. He could be referred.
Q. But then in order to treat the infected sinus, you refer him to a specialist, is that right, sir, is that right?
A. Right.

3. On the matter of causation, *see* the Restatement (Second) of Torts § 431 (1965):

*What Constitutes Legal Cause*

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a *substantial factor* in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm. (Emphasis added.)

The Restatement comments:

The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.

Prosser on Torts § 41 (3rd ed. 1964) is to the same effect:

On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff in general has the burden of proof. He *must introduce evidence which affords a reasonable basis* for the conclusion that the conduct of the defendant was a *substantial factor* in bringing about the result. (Emphasis added.)

The proof accepted by the jury established that Dr. Roberts was aware of the appellant's worsening sinus condition for a period of about three months before he referred him to a specialist. It would thus be manifestly reasonable to conclude that this delay was a major factor in the worsening of the appellant's condition; hence a substantial factor in causing the harm to the appellant. We therefore find that the jury acted properly in making this determination. *See* the Restatement (Second) of Torts § 434(2) (1965).

Nor is there any rule of law that will relieve Dr. Roberts from liability for the appellant's harm. True, the appellant's sinus infection was initiated by an innocent cause, and not by negligence attributable to Dr. Roberts, but his negligence in not making a prompt referral allowed the disease to spread to a serious stage. Apparently, there was no evidence adduced at trial by either side regarding what proportion of the appellant's damage was attributable to the lack of a prompt referral. We hold with the better modern authorities that the culpable defendant in such situations is liable for all damages unless he introduces evidence from which a fair apportionment can be made, Restatement (Second) of Torts, §§ 433A, 433B, and 450 (1965), and Prosser on Torts § 42 (3rd ed. 1964); hence Dr. Roberts was properly assessed for the defendant's entire damages.

4. The ear, nose, and throat specialist testified that in his expert opinion on 25 September, appellant's condition "was a severe condition. It was so severe, that it spread not only to the front sinuses, while waiting for a bed in the hospital, he developed what we call pan-ophthalmitis eye. His eye was pushed forward, as it was a secondary condition." In answer to counsel's question, "Given the findings of your examination on the 25th, do you have any opinion, sir, as to how long Mr. Graham's condition had been severe?", the specialist answered, "At least several weeks I would say."