Jerome LaMOUREAUX and Billie Marjorie LaMoureaux, Appellants,

v.

TOTEM OCEAN TRAILER EXPRESS, INC., Terry R. Risinger, Sea Star Stevedore Co., Inc., and Anchorage Independent Longshoreman's Union # 1, Appellees.

TOTEM OCEAN TRAILER EXPRESS, INC., Terry R. Risinger, and Sea Star Stevedore Co., Cross-Appellants,

v.

Jerome LaMOUREAUX and Billie Marjorie LaMoureaux, Cross-Appellees.

Nos. 4593, 4730.

Supreme Court of Alaska.

Aug. 21, 1981.

---

Spencer C. Sneed, Hartig, Rhodes, Norman & Mahoney, Anchorage, for appellants and cross-appellees.

Ann K. Stokes, Bradbury, Bliss & Riordan, Inc., Anchorage, for appellee Union.

Sanford M. Gibbs, Hagans, Brown & Gibbs, Anchorage, for remaining appellees and cross-appellants.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and BLAIR, Superior Court Judge.*

BURKE, Justice.

Jerome LaMoureaux filed suit in the superior court for personal injuries sustained in a collision between two trucks used to transport cargo at the Port of Anchorage. Billie Marjorie LaMoureaux, his wife, sued for loss of consortium.

Jerome LaMoureaux was waiting to make a left turn when he was struck from behind by a vehicle driven by Terry Risinger. Risinger was a longshoreman dispatched by Longshoreman's Local # 1 (Union) to work for Sea Star Stevedoring (Sea Star) and was driving a vehicle owned by Totem Ocean Trailer Express (TOTE). Risinger and Sea Star were found liable for LaMoureaux's injuries after a jury trial and no question as to their liability remains on appeal.[1] LaMoureaux has appealed with respect to the trial court's instructions on damages. Also, the Union was granted summary judgment prior to trial and LaMoureaux has appealed, contending that the Union owed a duty to the public, including the plaintiff, not to dispatch a longshoreman whom it should have known was an unsafe driver.

The appellees, except for the Union, have cross-appealed on the question of attorney's fees.

LaMoureaux suffered a ventral hernia in the accident, and also experienced pain in his neck, shoulders, back, and arms. The hernia was repaired soon after the accident, and the major element of LaMoureaux's claim is continuing pain and numbness in his upper body.

LaMoureaux was eventually diagnosed as suffering from thoracic outlet syndrome, or an interference with the blood flow and nerve paths to the arms, and was operated on twice for this condition. LaMoureaux continues to experience pain and numbness in his arms, which prevent his return to work as a truck driver. However, medical testimony at the trial indicated that while these symptoms persisted, treating physicians were unable to demonstrate objective reasons for them, and there was testimony that they may have had a psychological basis.

LaMoureaux admitted that he had complained of pain and tiredness in his arms, shoulder, and neck prior to the accident, but testified that this happened only occasionally, after many hours of work, and did not require him to miss work. LaMoureaux testified that the accident aggravated his condition and that he now experiences a constant ache. The defendants called several physicians who testified that they had treated LaMoureaux in the past ten years,

---

* Blair, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. The claims against TOTE were dismissed prior to trial, and though it is a party its liability is not urged on appeal.

Appellants have not objected to the award for loss of consortium made to Mrs. LaMoureaux, and we will therefore refer only to Jerome LaMoureaux in the portion of this opinion discussing their appeal.

and who stated that LaMoureaux had complained of numbness and tiredness in his arms. These physicians were generally unable to find an objective basis for his problems. There was testimony that LaMoureaux complained of pain and numbness up to ten days before the accident.

LaMoureaux did not tell the doctors who treated him after the accident that he had previously suffered similar symptoms. However, there was testimony that the accident could have aggravated his prior injuries, including a preexisting thoracic outlet syndrome. LaMoureaux's counsel did not ask any expert witness to attempt an apportionment of the injury that preexisted the accident and that occurring subsequently.

Prior to trial the defendants had made an offer pursuant to Civil Rule 68,[2] to allow a judgment of $150,000 to be entered against them. The offer was not accepted, and the case went to trial with the plaintiffs apparently seeking damages in excess of $1,000,-000.

Following trial, the jury found Risinger and Sea Star liable to the plaintiffs and fixed their damages at $26,311.72 for Mr. LaMoureaux's injuries and at $8,000 for Mrs. LaMoureaux's loss of consortium. However, LaMoureaux was found to have been partially at fault, reducing his recovery by 28.5 percent. The court denied LaMoureaux's motions for judgment notwithstanding the verdict, additur, or a new trial.

LaMoureaux filed a notice of appeal, and, following the court's decision on attorney's fees, cross-appellants filed a notice of cross-appeal as to that issue. The parties also entered into discussions concerning satisfaction of the judgment of the trial court. LaMoureaux's counsel sought to reach an agreement with counsel for Risinger and Sea Star for voluntary payment of the judgment without affecting the pending appeals. These negotiations broke down over LaMoureaux's refusal to guarantee return of any possible overpayment of attorney's fees.

LaMoureaux subsequently coerced payment of the judgment by obtaining a writ of execution against Sea Star's assets. The defendants thereupon moved in the trial court for entry of satisfaction of judgment. LaMoureaux opposed the motion, and submitted a "Partial Satisfaction of Judgment," claiming he did not intend to affect the status of his appeal by his action. The trial court did not rule on the motion.

## I

Appellees have moved to dismiss LaMoureaux's appeal, contending that he has forfeited his right to appeal by voluntarily accepting the benefits of the judgment from which he has appealed. We deferred consideration of the motion until after completion of briefing and oral argument.

Though the doctrine relied upon by appellees is of ancient origins,[3] we have confronted it on just one occasion. In *DeWitt v. Liberty Leasing Company of Alaska*, 499 P.2d 599, 602 n.17 (Alaska 1972) we held

---

**2.** Civil Rule 68 provides:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in this offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

**3.** *See* Annot., 169 A.L.R. 985 (1947).

that the appeal was not barred where the only issue was the trial court's denial of costs and attorney's fees. This decision comports with a recognized exception where a severable portion of a judgment is at issue. *See* Annot., 169 A.L.R. 985, 1029–30 (1947).

Here, it is apparent that no exception is applicable and LaMoureaux does not argue otherwise with respect to the points addressed in his brief. He contends instead that there would be little likelihood of a smaller verdict if a retrial was ordered. LaMoureaux claims any danger that the defendants would not be able to collect the amount of the overpayment if a lower verdict was returned could be eliminated by requiring that he post a bond sufficient to cover any possible reduction.

We believe the proper approach is that taken by some federal courts of looking to whether "payment of a judgment is made and accepted under such circumstances as to indicate an intention to finally compromise and settle a disputed claim." *Gadsden v. Fripp*, 330 F.2d 545, 548 (4th Cir. 1964).[4] By this method courts should be able to determine whether a live controversy is still present on appeal.

■ However, none of the federal cases involve a situation where the judgment creditor compelled satisfaction of the award. In such a situation we are faced with the objective manifestation of an intent to settle the controversy accompanied by subjective protestations of a desire to proceed with the appeal. Here we find that

LaMoureaux did not intend to abandon his appeal and we therefore decline to dismiss his appeal. *However, in future cases we will not examine the circumstances accompanying the compelled satisfaction of a judgment, but will instead require the party executing on the judgment to have posted an appropriate bond before execution, as an objective indication of his intent to pursue the appeal.*

## II

■ LaMoureaux asked that the jury be instructed that if they were unable to make an apportionment between his preexisting injury and that suffered in the accident then the defendants were liable for his entire injury.[5] This instruction effectively places the burden on the defendants to show what portion of the injury predated the accident, as their failure to do so would allow recovery for the preexisting injury as well as that caused by the defendants.

In contrast, the trial court instructed the jury as follows:

A person who has a condition or disability at the time of an injury is not entitled to recover damages therefor. However, he is entitled to recover damages for an aggravation of such pre-existing condition or disability proximately resulting from the injury.

This is true even if the person's condition or disability made him more susceptible to the possibility of ill effects than a normally healthy person would have been, and even if a normally healthy per-

---

4. *See also United States v. Hougham*, 364 U.S. 310, 312–13, 81 S.Ct. 13, 15–16, 5 L.Ed.2d 8, 12 (1960); *United States ex rel. H & S Inds. v. F. D. Rich Co.*, 525 F.2d 760, 763–65 (7th Cir. 1975); *Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co.*, 414 F.2d 750, 752 (9th Cir. 1969); Annot., 5 L.Ed.2d 889 (1961); 9 J. Moore, Federal Practice ¶ 203.06, at 3–26 to 3–27 (2d ed. 1980).

5. The proposed instruction provided in relevant part:

Where a pre-existing condition, disability or infirmity has been aggravated, activated, or accelerated by the collision, the Defendants must prove by a preponderance of the evidence what expenses, pain, suffering, dis-

ability, or impairment are attributable solely to Plaintiff's condition at the time of the collision, that is, which Plaintiff would have suffered even if the collision had not occurred.

If Defendants do not prove by a preponderance of the evidence what portion of Plaintiff's present disabled condition resulted from Plaintiff's preexisting condition, Defendant is liable for the entire disability. That is, if the evidence does not provide you with a reasonable basis for apportioning Plaintiff's disabled condition between that caused by the pre-existing condition and that caused by the collision, Defendant is liable for the entire disability.

son probably would not have suffered any substantial injury. In other words, the law provides that a defendant takes the plaintiff as he finds him.

Where a pre-existing condition or disability is so aggravated, the damages as to such condition or disability are limited to the additional damages caused by the aggravation.

This instruction was taken almost verbatim from the Book of California Approved Jury Instructions. Cal.Jury Instns., Civ., No. 14.-65 (6th ed. 1977). The court reasoned that LaMoureaux was better able, as a matter of policy, to bear the burden of proof on the extent of injury brought about by the accident.

LaMoureaux does not dispute that in the ordinary case he is only entitled to recover for the aggravation to any preexisting injuries. However, he argues that the jury must also be told what to do in the event they are unable to determine what part of his injuries was caused by the accident and what part predated it. In contending that the defendants should be liable in this situation for his entire condition, as his proposed instruction provides, LaMoureaux relies upon cases from other jurisdictions approving such an instruction,[6] and on tort policies favoring compensation of innocent victims. We have not previously passed on the question, though it was mentioned in *Irving v. Bullock*, 549 P.2d 1184, 1187 (Alaska 1976). In *Irving* we did approve the instruction given by the trial court here, but expressly noted that we would not then decide the issue of whether the instruction was objectionable because it failed to place the burden of proof on the defendant to show what portion of the damages resulted from the preexisting condition. *Id.* at 1187.

The problem presented is hardly new or uncommon. It may be one of causation, or whether and to what extent the defendant brought about the plaintiff's injuries. Be-

cause causation may be difficult or impossible to prove, the courts have looked to the policies of tort law to determine which party should bear the risk of a failure of proof.

Thus, in the landmark case of *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948), where each of two defendants fired bird shot in the direction of the plaintiff, but he was hit in the eye by only one pellet, the court placed the burden on the defendants to absolve themselves of liability at the risk of being responsible for the entire damage. Though each defendant acted wrongfully, absent such placement of the burden of proof plaintiff would recover nothing unless he was able to fix the blame on one of the two wrongdoers. The greater injustice was thought to be in denying all redress to the plaintiff, rather than making one defendant pay for more damage than he caused. *Id.* at 4.

In a similar fashion, courts recognize that a defendant whose acts aggravate a plaintiff's preexisting condition is liable only for the amount of harm actually caused by the negligence. 2 F. Harper & F. James, The Law of Torts § 20.3, at 1128 (1956); W. Prosser, Law of Torts § 52, at 318 (4th ed. 1972). But it is often difficult to determine how much of a plaintiff's injury is due to the preexisting condition and how much to the aggravation caused by the defendant. The first step in this situation is to relieve the plaintiff of proving with great exactitude the amount of aggravation:

The requirements of proof usually have been somewhat relaxed in such cases, and it has been said that no very exact evidence will be required, and that general evidence as to the proportion in which the causes contributed to the result will be sufficient to support a verdict.

W. Prosser, *supra*, at 319 (footnote omitted). Harper and James call this letting "the jury make the best guess they can at

---

6.  *E. g., Newbury v. Vogel*, 151 Colo. 520, 379 P.2d 811, 812–13 (1963); *Graham v. Roberts*, 441 F.2d 995, 998 n.3 (D.C.Cir.1970); *Kawamoto v. Yasutake*, 49 Haw. 42, 410 P.2d 976, 980–81 (1966); *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397, 404–06 (1967); *McNabb v. Green*

*Real Estate Co.*, 62 Mich.App. 500, 233 N.W.2d 811, 819–20 (1975); *Fosgate v. Corona*, 66 N.J. 268, 330 A.2d 355, 357–58 (1974); *Foster v. Baptist Memorial Hospital*, 506 S.W.2d 775, 778–79 (Tenn.App.1973).

apportionment on whatever evidence has been made available in the case." F. Harper & F. James, *supra*, at 1129 (footnote omitted). They state that this "seems to be the usual way of handling the problem where plaintiff shows the total extent of his injury and it also appears that defendant's act merely aggravated a pre-existing condition." *Id.* at 1129–30.

Here LaMoureaux urges us to go further and adopt a system placing the burden on the defendants to show the extent to which their contribution fell short of the whole injury. He invokes the same policy referred to above—not allowing the culpable defendant to take advantage of plaintiff's inability to prove his loss. However, one of the causes of LaMoureaux's injury is an innocent one, his preexisting condition, and this situation seems to warrant different treatment than that involving two possible tortfeasors.

LaMoureaux's argument that the rationale for reallocating the burden of proof is even more compelling in his case, as there is no other defendant from whom he can obtain recompense, ignores another fundamental reason for placing the burden of proof on the defendant. This is the desire to place the burden of proof on the party with the greatest access to the relevant evidence. Where two tortfeasors are involved, they presumably can furnish evidence as to their degree of contribution to plaintiff's injury. But, if the plaintiff is suffering from a preexisting injury, he or she is in the best position to furnish information on the degree to which that injury was aggravated by the defendant's acts.

Judge Souter based his decision on this factor. In refusing to give LaMoureaux's proposed instruction he said,

> I believe that the Plaintiffs are better able to bear that burden of proof than are the Defendants. The reason being, of course, that ... it's Mr. Lamoureaux's own body, it is Mr. Lamoureaux's own prior history which is known far better to him than ever could be known to the Defendants.

Even if a plaintiff does come forward with evidence as to an earlier injury, he or she may still be confronted with the problem of the inability of medical experts to determine the amount of aggravation. This is the situation faced by several of the courts which have held that a plaintiff is entitled to an instruction placing the burden on the defendant to show apportionment at the risk of being held liable for the entire damage. In such a situation there may be some basis for a decision to impose the entire liability on the defendant, because his or her conduct has created the uncertainty as to apportionment of the injury. *See McNabb v. Green Real Estate Co.*, 62 Mich.App. 500, 233 N.W.2d 811, 819 (1975).

However, a decision to place the entire liability on the defendant is an extreme measure, and we do not believe that it should be done absent a showing of compelling injustice to the plaintiff. Thus, Prosser states that "entire liability will be imposed only where there is no reasonable alternative." W. Prosser, *supra*, at 314. With regard to some of the cases cited by LaMoureaux he says: "There are even courts which have placed upon the defendant the burden of apportionment where part of the damages have been due to an innocent cause." *Id.* at 320 (footnote omitted).

Here, there are no circumstances pointing to a compelling injustice. LaMoureaux testified as to the amount of intermittent discomfort before the accident as contrasted with the "constant ache" afterwards. Doctors also testified to his prior medical condition, as well as to his post-accident symptoms. Thus, there was ample evidence on which the jury could have determined the extent of aggravation. There was no evidence or indication that apportionment was impossible, so there was no basis in the record for giving the requested instruction.

## III

We need not discuss LaMoureaux's remaining specifications of error with respect to the conduct of the trial, because they are

relevant only to the question of the liability of Risinger and Sea Star, which is not in dispute on appeal.

Because of our holding that LaMoureaux's damages were properly measured in the trial against the other defendants, we also need not determine whether the Union was properly dismissed from the action. This conclusion would ordinarily follow from the principle that a plaintiff may not proceed further against a joint or concurrent tortfeasor where a judgment and a satisfaction against another tortfeasor has been obtained. Restatement (Second) of Torts § 886, Comment b (1979); Restatement (Second) of Judgments § 95, Comment d (Tent.Draft No. 3, 1976); W. Prosser, *supra*, at 299–300. Here, however, we determined that we would not dismiss his appeal in this instance, for the reasons stated earlier in our opinion. Thus, we would be inclined to review LaMoureaux's claim against the Union were it not for the principles of collateral estoppel.

■ The key issue at trial was the amount of damages, and we have held that LaMoureaux received a fair trial on this question. No other circumstance suggests another trial on the question of damages is appropriate. *Compare Pennington v. Snow,* 471 P.2d 370, 377–78 (Alaska 1970); *see* Restatement (Second) of Judgments § 68.1 (Tent.Draft No. 1, 1973), § 88 (Tent.Draft No. 2, 1975). LaMoureaux's right to proceed against other possible tortfeasors does not include the right to relitigate questions necessarily determined in the prior trial, Restatement (Second) of Judgments § 94, Comment a (Tent.Draft No. 3, 1976), and no purpose can be served by deciding whether the Union is liable since LaMoureaux's damages have been conclusively determined and completely satisfied.

## IV

With respect to the cross-appeal on costs and attorney's fees, we are first asked to reverse the trial court's determination that LaMoureaux prevailed until the offer of judgment under Civil Rule 68 [7] was made, while the cross-appellants prevailed after that time.

■ The determination of the prevailing party is reviewable under the abuse of discretion standard. *Continental Ins. Co. v. U. S. Fidelity & Guar. Co.,* 552 P.2d 1122, 1125 (Alaska 1976). Here, we believe the court could properly decide it was plaintiffs' diligent efforts during lengthy pretrial discovery that led to the offer of judgment. Though cross-appellants find it difficult to conceptualize how both parties could have "prevailed," such a ruling has ample precedent in our past decisions. *Scott v. Robertson,* 583 P.2d 188, 194 (Alaska 1978); *Jakoski v. Holland,* 520 P.2d 569, 578 (Alaska 1974). Therefore we uphold the trial court's "prevailing party" determinations.

■ We find more merit in the cross-appellants' argument that the lower court erroneously computed the award of attorney's fees. In determining the appropriate fee award, the court decided that departure from the schedule of fees set out in Civil Rule 82(a)(1) [8] was appropriate "due to the complexity of the issues involved, both legal and factual, which necessitated both extensive trial preparation and trial participation." The court therefore multiplied the Rule 82(a)(1) amounts by three.

The court determined that greater time and effort was required prior to trial than in actual trial participation, and therefore

---

7. See note 2, *supra.*

8. Civil Rule 82(a)(1) provides:
   (a) *Allowance to Prevailing Party as Costs.*
   (1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

ATTORNEY'S FEES IN AVERAGE CASES

|  | | Contested | Without Trial | Non-Contested |
|---|---|---|---|---|
| First | $2,000 | 25% | 20% | 15% |
| Next | $3,000 | 20% | 15% | 12.5% |
| Next | $5,000 | 15% | 12.5% | 10% |
| Over | $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.

awarded LaMoureaux four-sevenths of the amount ascertained by multiplying the Rule 82(a)(1) amount by three.[9] While we find no abuse of discretion in this decision, we think the court erred in effectuating its award.

By its reasoning, the court indicated a desire to give LaMoureaux slightly greater compensation for the time for which he was found to have prevailed, than was given to cross-appellants for their efforts. Thus, LaMoureaux's award should be the amount determined by Judge Souter's formula for his counsel's efforts (four-sevenths of the tripled amount) less that given to cross-appellant's counsel (three-sevenths of the tripled figure), or one-seventh of the triple Rule 82(a)(1) amount. As LaMoureaux instead received four-sevenths with no offset for cross-appellants, we reverse the attorney's fee award and remand the case for recomputation in accord with our understanding of the lower court's original intent.

The motion to dismiss is DENIED.

The judgment is AFFIRMED in part and REVERSED in part, and the case is REMANDED.

COMPTON, J., not participating.

---

**9.** This division arose from LaMoureaux's counsel's suggestion to the court that about 400 of the 700 hours he spent on the case came before trial.