Jerome LaMOUREAUX and Billie
Marjorie LaMoureaux, Appellants,

v.

TOTEM OCEAN TRAILER EXPRESS,
INC., Terry R. Risinger, Sea Star Steve-
dore Co., Inc., and Anchorage Indepen-
dent Longshoreman's Union # 1, Appel-
lees.

TOTEM OCEAN TRAILER EXPRESS,
INC., Terry R. Risinger, and Sea Star
Stevedore Co., Cross-Appellants,

v.

Jerome LaMOUREAUX and Billie Mar-
jorie LaMoureaux, Cross-Appellees.

Nos. 4593, 4730.

Supreme Court of Alaska.

Sept. 24, 1982.

Spencer C. Sneed, Hartig, Rhodes, Nor-
man & Mahoney, Anchorage, for appellants
and cross-appellees.

Ann K. Stokes, Bradbury, Bliss & Rior-
dan, Inc., Anchorage, for appellee Union.

Sanford M. Gibbs, Hagans, Brown &
Gibbs, Anchorage, for remaining appellees
and cross-appellants.

Before BURKE, C. J., RABINOWITZ,
CONNOR and MATTHEWS, JJ., and
BLAIR, Superior Court Judge.*

* Blair, Superior Court Judge, sitting by assign-
ment made pursuant to article IV, section 16 of
the Constitution of Alaska.

## OPINION ON REHEARING

BURKE, Chief Justice.

On October 18, 1976, Jerome La-Moureaux was waiting to make a left turn when his vehicle was struck from behind by a truck driven by Terry Risinger. Risinger was a longshoreman dispatched by Longshoreman's Local # 1 to work for Sea Star Stevedoring.[1] At issue in this petition is whether the Union owed a duty of care to members of the public to ensure that union members dispatched to drive were qualified drivers.[2]

LaMoureaux identifies two sources of such a duty: (1) a duty of care flowing from general tort law considerations; and, (2) a duty of care assumed by contract[3] and evidenced by port practice. Because we remand for a factual finding on whether the union voluntarily undertook to ensure that its drivers were qualified, we do not reach the broader question of whether such a duty exists under general tort law principles.

The trial court granted summary judgment to the union, determining that the union and LaMoureaux lacked a relationship sufficient to give rise to a duty of care. Summary judgment is appropriate where there is no genuine question of material fact and the moving party is entitled to judgment as a matter of law on the established facts. *Adams v. State,* 555 P.2d 235, 237 (Alaska 1976); *Braund, Inc. v. White,* 486 P.2d 50, 53 (Alaska 1971). All inferences of fact are drawn in favor of the person opposing the motion and against the movant. *Nizinski v. Golden Valley Electric Association, Inc.,* 509 P.2d 280, 283 (Alaska 1973).

LaMoureaux contends that summary judgment was inappropriate because the proffered evidence gave rise to a genuine question of material fact, i.e., whether the union voluntarily assumed a duty of care to ensure that union members dispatched as drivers could lawfully drive.[4] We agree.

---

1. For a more comprehensive rendition of the facts underlying this case, *see LaMoureaux v. Totem Ocean Trailer Express, Inc.,* 632 P.2d 539, 541–42 (Alaska 1981). In that case, we held, among other things, that LaMoureaux did not intend to forego his appeal by obtaining a writ of execution in partial satisfaction of judgment. *Id.* at 543. We did not address the question of union liability, reasoning that no purpose would be served by addressing the issue since LaMoureaux's damages had been conclusively determined and completely satisfied. *Id.* at 546. In so holding, we overlooked the fact that the trial court awarded attorney's fees to the union as the prevailing party below. Although we have previously stated that we will not hear a moot case merely to determine who is the prevailing party for purposes of awarding attorneys' fees, *State, Comm'r of Dept. of Health v. Seward Marine Serv., Inc.,* 612 P.2d 1010, 1012 n.3 (Alaska 1980); *Munroe v. City Council of Anchorage,* 545 P.2d 165, 170 (Alaska 1976), *modified,* 547 P.2d 839 (Alaska 1976), we believe that the rule announced in those decisions is wrong and those decisions are therefore overruled as to that point. AS 22.05.010(b) provides for an appeal to this court from civil actions commenced in the superior court. It draws no distinctions between judgments which are adverse because a party has been required to pay money for costs and attorney's fees and those which are adverse because a party has been required to pay money as damages. In each case, an appeal is a matter of right.

2. Risinger had an abysmal driving record on the date he was dispatched to drive for Sea Star. In the three years prior to the accident, he had accumulated five speeding citations, four safety related citations and one unsafe passing violation. In addition, he was involved in two rear end collisions in which he was admittedly at fault. The Department of Public Safety had suspended Risinger's license as a result of these violations and he was driving without a license at the time of the accident.

   It is uncontested that the union did not know of Risinger's driving record when it dispatched him to drive for Sea Star Stevedoring. This is not a case where an actor proceeded negligently in the face of a known risk. Rather, the question presented is whether the union had a duty to investigate Risinger's driving record and thus learn of his dangerous propensities.

3. Sea Star Stevedoring had entered into a contract with Longshoreman's Local # 1.

4. The concept of voluntary assumption of a duty has long been established in this jurisdiction. *See Adams v. State,* 555 P.2d 235, 240 n.7 (Alaska 1976) and cases cited therein. In *Adams,* we held that where the state undertook to conduct safety inspections for fire hazards, it assumed a duty of care running to third persons. Breach of this duty subjected the state

The contract between Sea Star and the union does not explicitly obligate the union to check its members for driving qualifications. The agreement does, however, provide that the union shall dispatch regular and experienced *longshoremen,* presumably individuals qualified to do those tasks necessary in offloading cargo. A longshoreman dispatched to drive a truck is not qualified if unlicensed. Additionally, LaMoureaux presented the testimony of Darrell Bahner, the manager of Sea Star Stevedore North. Bahner testified that he understood that the union was obligated to supply competent and licensed drivers. He testified further that the union had actually undertaken this responsibility and that Sea Star relied on the union's screening process.[5] Given that all factual inferences should be

drawn adversely to the union, *Nizinski v. Golden Valley Electric Association, Inc.,* 509 P.2d 280, 283 (Alaska 1973), we think the proffered evidence gives rise to a genuine issue of material fact whether the union assumed a duty of care. We remand for a determination of this question.

REVERSED and REMANDED.

COMPTON, J., not participating.

---

[5] Bahner testified, in part, as follows:

to liability to persons injured as a result of the state's negligence. In deciding that case, we cited § 324A of the Restatement (Second) of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Applying the tenets of § 324A to the present case, union liability would be present if LaMoureaux established that the union undertook to screen its members for driving competence (a service necessary for the protection of third parties) and that Sea Star relied on the union's assumption of that duty.

Several courts have intimated that there can be no liability in the assumption of a duty of care context where the negligence consists of mere nonfeasance as opposed to malfeasance, i.e., negligent performance. *See, e.g., Hanson v. Blackwell Motor Co.,* 143 Wash. 547, 255 P. 939 (1927). We think this distinction without merit and decline to adopt it here. As we noted in *Adams v. State,* 555 P.2d 235, 240 n.10 "[w]here there is a duty to act, inaction as well as unreasonable action may constitute a breach." *See also Transamerica Title Ins. Co. v. Ramsey,* 507 P.2d 492, 496 (Alaska 1973).

Q: Okay. And with this background and with the safety meetings and whatnot, you trust the union, then, to send you safe drivers?
A: That's—we always have felt that it's the obligation of the union to supply us with skilled people. They've always taken that responsibility.
Q: Okay, it's fair to say that you rely on the union to send you safe drivers?
A: Yes....

....

Q: Sir, is it your understanding of the contract with the longshoremen that contractually they're obligated to supply you with safe and competent drivers?
A: Yes.
Q: Okay. Do you know what part of the contract requires that?
A: No.
Q: If you took a moment, could you identify it, do you think or

....

A: No, I don't think that I probably could. It's kind of an understanding, as we say down there, past port practice.
Q: Past what?
A: Port practice. In other words, they've always been able to supply us with competent people and that's why the union has the particular jurisdiction, because they supposedly are going to be able to supply us with qualified people to do that type work.

....

Q: With respect to driving records of employees, having licenses or not having licenses, that sort of thing, do you expect to get that information from the union on a driver?
A: I expect the union to supply me with qualified drivers.