**Carol COOPER, Appellant,**

v.

**Marilyn BERZIN, M.D., Appellee.**

**No. 91–CV–1340.**

District of Columbia Court of Appeals.

Argued Jan. 4, 1993.

Decided March 9, 1993.

As Amended May 18, 1993.

**396**

Michael M. Wilson, with whom Micah Taylor, Washington, DC, was on the brief, for appellant.

Brian F. Holeman, with whom Brian J. Nash, Washington, DC, was on the brief, for appellee.

Before ROGERS, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

ROGERS, Chief Judge:

Appellant Carol Cooper appeals from a jury verdict in favor of appellee Marilyn Berzin in a medical malpractice case. Her sole contention on appeal is that the trial judge erred in denying her request that the jury be instructed that the defendant bore the burden of proof in apportioning damages. She maintains that if Dr. Berzin's conduct was a proximate cause of appellant's injuries, then the doctor is liable for all of those injuries unless the doctor introduces evidence from which a fair apportionment can be made. Because the jury resolved the issue of culpability in favor of appellee and thus never reached the issue of damages, even if the trial judge had erred, and we conclude he did not, any such error would have been harmless. Accordingly, we affirm.

## I.

This appeal arose out of a medical malpractice suit brought by appellant Carol Cooper against appellee Marilyn Berzin, M.D. On December 29, 1986, after seeing another doctor, appellant first visited Dr. Berzin. Appellant complained of a rash on her arms, thighs, and chest and of intense itching of her scalp. In her patient history, she indicated that she had suffered for several years from seborrheic dermatitis, a dermatological condition. Dr. Berzin prescribed a regimen of treatment in an effort to respond to the various problems appellant was having. The doctor concluded that appellant suffered from seborrheic dermatitis as well as another condition known as keratosis pilaris. Dr. Berzin testified that none of the conditions on appellant's body resembled lichen planopilaris.[1] She explained that she did not think there was a need for a biopsy at that point because appellant had the classic signs of seborrheic dermatitis and keratosis pilaris, and that if appellant did not respond to the treatment by the next visit, further action would be taken.

Appellant returned to Dr. Berzin on January 20, 1987, and for the first time complained of massive hair loss. Dr. Berzin

1. Lichen planopilaris is a form of lichen planus, an inflammatory skin disease. TABER'S CYCLOPED-IC MEDICAL DICTIONARY 953 (15th ed. 1985).

took further patient history and performed a scalp biopsy in order to obtain a microscopic evaluation of appellant's scalp. The doctor also started appellant on a topical steroid lotion to treat her scalp. Included with the biopsy specimen sent to the pathologist were comments asking the pathologist to consider several conditions.

On or about January 28, 1987, Dr. Berzin received the biopsy report from the pathologist concluding that the scalp specimen constituted granulomatous folliculitis. Considering this report "unusual," Dr. Berzin immediately consulted with her partner, appellant's treating internist, and the pathologist. Dr. Berzin testified that the granulomatous disease can be very serious as it may be caused by diseases such as tuberculosis, sarcoidosis, deep fungal infections, or lymphoma. Accordingly, various tests were set up to assess what action should be taken. Dr. Berzin stated that oral steroids given to a patient who may have a granulomatous condition could make that patient very sick, described the various side effects associated with steroids, and stated that she does not start people on steroids without having a diagnosis.

On January 29, 1987, appellant returned to Dr. Berzin's office in order to have her sutures removed. At this time, Dr. Berzin asked her partner, Dr. Isaacson, to examine appellant. Dr. Isaacson testified that while this was taking place, Dr. Berzin called the pathologist, Dr. Williams, on the telephone:

> It was my impression from that conversation that Dr. Williams was just as confused about the biopsy and the clinical presentation in that the two did not seem to go ahead and go along with one another. What we saw in the biopsy was not consistent with what was being seen clinically.

Dr. Berzin recorded in her notes of January 29, 1987: "the clinical picture does not seem to fit the histology."

Appellant's next visit occurred on February 9, 1987. Dr. Berzin noted that appellant's scalp was less flaky, that the medication would be continued, and that a second scalp biopsy would be considered at the return visit scheduled in two weeks. Dr. Berzin observed scarring of the scalp and immediately performed the second biopsy. She considered lichen planopilaris as a possible diagnosis, and the biopsy report contained a similar finding as well.

On March 5, 1987, Dr. Berzin presented appellant for examination at a dermatology conference. The conferees recommended a third biopsy in order to determine conclusively whether appellant was suffering from lichen planopilaris or lupus erythematosus. The following day appellant began taking oral steroids to treat the symptoms of lichen planopilaris. Although appellant's hair loss abated once she was placed on this treatment system, she is now entirely bald except for fringes of hair on the front, sides, and back of her head.

At trial, appellant's basic theory of recovery was that Dr. Berzin's failure to diagnose and treat appellant's condition in a timely manner proximately caused her extensive hair loss. To this end, appellant called two expert witnesses who testified that Dr. Berzin breached the standard of care of a board certified dermatologist and that this breach caused appellant to lose more hair than she otherwise would have lost.[2] In response, Dr. Berzin presented

---

**2.** Dr. Alexander testified that Dr. Berzin breached the standard of care by failing to perform a biopsy on appellant's first visit, by not responding appropriately to the results of the first pathology report and the physical appearance of the rash, and by failing to follow up on information about appellant's past history of lichen planus in the mouth. Dr. Rabin testified that Dr. Berzin's failure to examine appellant's mouth and to respond properly to the pathology report by placing appellant on oral steroids as soon as there was no contraindication constituted a breach of the standard of care.

Regarding causation, Dr. Alexander stated his medical opinion that these breaches were a substantial factor in causing appellant to lose most of her hair after February 1987. Dr. Rabin testified that if oral steroids had been administered beginning at appellant's first visit, 80 to 90 percent of appellant's hair would have been saved, and that had the steroids been started on the January 29 visit, she probably would not have lost more than 35 to 40 percent of her hair.

two expert witnesses who testified that her diagnosis and treatment of appellant's condition was consistent with the applicable standard of care. In addition, Dr. Berzin introduced evidence that giving oral steroids can be dangerous for a patient who might be suffering from an infectious process at the time.[3]

At the close of the evidence, appellant requested that the trial judge instruct the jury that the burden of proof on the amount of damages shifted to the defendant once the jury found that the defendant had failed to conform with the standard of care and that the failure was a major factor in worsening the plaintiff's condition.[4] In support of this instruction, appellant relied on *Lacy v. District of Columbia*, 424 A.2d 317 (D.C.1980), and *Graham v. Roberts*, 142 U.S.App.D.C. 305, 441 F.2d 995 (1970). The trial judge found the *Lacy* case inapplicable, since it addressed causation rather than damages. The judge distinguished *Graham v. Roberts, supra*, 142 U.S.App.D.C. 305, 441 F.2d 995, in view of the fact that there was evidence in the instant case from which the jury could determine the amount of damages:

> That's not this case. This is a case in which the plaintiff called two expert witnesses who did offer evidence about the extent of damage done and the defendants called witnesses who offered expert testimony about the extent of dam-

age done. It is clearly not the *Graham v. Roberts* situation. I certainly don't think you can extrapolate from *Graham v. Roberts* the proposition that if the plaintiff calls experts who say so much for other damage was done and the jury chooses to disbelieve them, that suddenly shifts the burden of proof on damages to the defendant. That's nonsense. That wouldn't make any sense at all.

> This is a case in which both parties offered evidence, rather extensive expert testimony on causation of damages, extent of damages, and so this is just not a *Graham v. Roberts* case, and I'm not going to give that instruction.

The judge instructed the jury that appellant had the burden to prove by a preponderance of the evidence that Dr. Berzin did not meet the degree of skill, care, and learning ordinarily possessed by a nationally certified dermatologist acting in similar circumstances, and that this act or failure on the part of Dr. Berzin "played a substantial part in bringing about the injury or damage." Regarding damages, the judge instructed the jury that Dr. Berzin was liable only for the damages she proximately caused and that the burden of proof of damages remained with the plaintiff.[5] The jury returned a verdict in favor of Dr. Berzin.

---

3. Appellant's own expert (Dr. Alexander) conceded that Dr. Berzin had not violated the standard of care when she decided not to give oral steroids to a patient who was awaiting the results of a lymph node biopsy: "It's a close call. I would probably say not quite."

4. Specifically, appellant requested the judge to instruct the jury that:

> You are instructed that if you conclude from the evidence that Dr. Berzin failed to comply with the standard of care and that such failings were a major factor in the worsening of plaintiff's condition, but that the amount of such damage to plaintiff's physical condition is difficult to ascertain with specificity, you are instructed that the burden of proof shifts to the defense to establish the degree of plaintiff's worsening condition. Specifically, if you find from the evidence that Dr. Berzin was required to prescribe steroids at an earlier time than she did and that such failing caused plaintiff to lose hair, the

defense bears the burden of proof to establish the amount or degree of plaintiff's hair loss.

5. The judge instructed:

> If you find for the plaintiff, you must award to the plaintiff a sum of money which will fairly and reasonably compensate her for all the damages suffered by her which were caused by the negligence by the defendant. That is, the defendant's failure to adhere to the standard of care.
> If you find that the defendant was negligent in this respect, but that such negligence was not the proximate cause of damages to the extent claimed by the plaintiff, then the plaintiff may recover only that portion of damages which resulted proximately from the defendant's negligence.
> The burden of proof is upon the plaintiff to establish all elements of her damages. The amount of your verdict must be based upon the evidence presented as to injuries and losses.

## II.

On appeal, appellant contends that she is entitled to a new trial as a result of the trial judge's refusal to give her requested instruction on the apportionment of damages. For several reasons, we disagree, and accordingly affirm.

The form of the verdict returned by the jury makes clear that the jury did not find Dr. Berzin negligent. In his instructions to the jury, the trial judge explained that the verdict form would pose two questions: first, whether the doctor failed to comply with the applicable standard of care,[6] and second, if the jury found Dr. Berzin liable, the measure of damages.[7] The judge also instructed the jury that if it found for the doctor on the first question (whether Dr. Berzin was negligent), the inquiry was ended and it was not to proceed to the second question (the amount of damages). The

jury found for the doctor on the first question.[8]

Appellant's sole contention on appeal, that the trial judge improperly denied her request for a damages instruction, is, consequently, to no effect. While appellant maintains that the doctor would be liable for all of appellant's damages unless the doctor introduced evidence from which a fair apportionment can be made, the necessary predicate underlying appellant's damages instruction was never met. Having found that Dr. Berzin was not liable, the jury had no occasion to consider the issue of damages.[9]

In addition, the instructions relating to the first question (whether Dr. Berzin was negligent) did not include an instruction that the jury could not award speculative damages. The latter instruction was given only in connection with the judge's

**6.** The trial judge instructed the jury:

Now, if under all of the instructions that I have given you and all the evidence you've heard in the case and considering the closing arguments of counsel, which you will hear tomorrow, if you find that the plaintiff has proven by a preponderance of the evidence that a failure to adhere to the applicable standard of care was committed by Dr. Berzin in one of these ways *and that that failure proximately caused injury to the plaintiff,* then you should check the box marked "plaintiff."

On the other hand, if you find that the plaintiff has not proven that, that is, has not proven that *a failure to conform to the standard of care by Dr. Berzin proximately caused injury to her,* then you would check the line marked "defendant."

In explaining the meaning of "proximate cause," the judge instructed that "an injury or damage is said to have been proximately caused by some act or failure to act whenever it appears from a preponderance of the evidence that the act or omission played a substantial part in bring about the injury or damage. Moreover, it must be shown that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission."

**7.** The judge instructed the jury that if the jury resolved the first question in favor of the plaintiff, the jury was to proceed to the second question and assess the amount of the plaintiff's damages. In connection with the latter question, the judge explained that the jury

must award to the plaintiff a sum of money which will fairly and reasonably compensate her for all the damages suffered by her which were caused by the negligence of the defendant. That is, the defendant's failure to ad-

here to the standard of care. If you find that the defendant was negligent in this respect, but that such negligence was not the proximate cause of damages to the extent claimed by the plaintiff, then the plaintiff may recover only that portion of damages which resulted proximately from the defendant's negligence. The burden of proof is upon the plaintiff to establish all elements of her damages.

The judge proceeded to instruct that the jury was "not to award to the plaintiff speculative damages," and listed five items that the jury could take into consideration in assessing damages, including mental and emotional anguish.

**8.** When the jury returned its verdict, the following exchange took place:

THE DEPUTY CLERK: *Members of the jury, speaking through your Foreperson and reading question number one, on the claim of plaintiff, Carol Cooper, against defendant Marilyn Berzin, for medical malpractice, for whom do you find?*

THE FOREPERSON: Defendant.

**9.** Appellant's own suggested instruction bears this out as well. Plaintiff's Special Jury Instruction Number 2 stated:

You are instructed that if you conclude from the evidence that Dr. Berzin failed to comply with the standard of care and that such failings were a major factor in the worsening of plaintiff's condition, but that the amount of such damage to plaintiff's physical condition is difficult to ascertain with specificity, you are instructed that the burden of proof shifts to the defense to establish the degree of plaintiff's worsening condition. . . .

instructions on damages. *See supra* note 7. Appellant nevertheless maintains that the instruction on the first question made proof of injury an element of the first determination, *see* italicized language of note 6, *supra,* and thus the jurors could have checked the first box on the verdict form in favor of Dr. Berzin even if they believed that the doctor was negligent because they may have believed (as a result of allegedly erroneous instructions on apportionment of damages) that Ms. Cooper suffered no compensable injury. Therefore, Ms. Cooper maintains she was entitled to a burden-shifting instruction on the issue of partial or apportioned damages. We disagree for several reasons.

First, under the judge's instructions, the issue of apportionment—how much hair loss was caused by Dr. Berzin's negligence—was not presented until after the jury answered the first, or liability, question on the verdict form, namely, whether the doctor had failed to adhere to the applicable standard of care and whether that failure, if any, proximately caused injury to Ms. Cooper. Hence, the jury's express statement that it found for the doctor on the first question is *prima facie* evidence that its verdict did not rest on confusion regarding the percentage of damages.

Second, the relevant instruction given to the jury was simple and clear. It told the jury that "plaintiff may recover only that portion of damages which resulted proximately from the defendant's negligence." This instruction was standard, *see* STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 12–2 (1985 ed.), and left to the jury a very practical assessment of how much of Ms. Cooper's hair loss was attributable to the fault (if there was fault) of Dr. Berzin. Therefore, the judge was not required to give Ms. Cooper's instruction since the instruction given was adequate to address the apportionment issue, and did not involve the extraordinary step of shifting the burden to the defendant on what normally is an element of the plaintiff's case. By contrast, Ms. Cooper's

requested instruction was potentially confusing because it would have required the defense to establish "the degree of plaintiff's worsening condition" or "the amount or degree of plaintiff's hair loss"—both of which a jury would naturally think within the peculiar ability of the plaintiff to prove.

■ Finally, the trial judge correctly ruled that the *Graham* holding was inapplicable to the instant case. In *Graham v. Roberts, supra,* 142 U.S.App.D.C. at 306, 441 F.2d at 996, the plaintiff claimed that his dentist was negligent in continuing to treat a worsening condition over a four-month period instead of referring him to a qualified specialist when the problem became apparent. On appeal, in reinstating the jury verdict in favor of the plaintiff, the court focused primarily on the issue of causation but stated in a footnote:

> Apparently, there was no evidence adduced at trial by either side regarding what proportion of the appellant's damage was attributable to the lack of a prompt referral. We hold with the better modern authorities that the culpable defendant in such situations is liable for all damages unless he introduces evidence from which a fair apportionment can be made.

*Id.* at 308 n. 3, 441 F.2d at 998 n. 3 (citing RESTATEMENT (SECOND) OF TORTS §§ 433A, 433B, and 450 (1965)). *Graham* did not suggest that the burden of proof on damages actually shifted to the defendant in that case. Rather, it stands for the proposition that in the unique situation where the plaintiff met its burden to prove culpability and damages and neither party offered evidence of apportionment, the plaintiff was entitled to recover fully unless the defendant offered evidence why he should not fairly be held responsible for all of the damages. In any event, unlike *Graham,* where there was no evidence relating to the apportionment of damages, in the instant case appellant offered expert testimony regarding the amount of baldness that could have been prevented had appellant been treated earlier with oral steroids.[10] Thus, there was ample evidence before the jury

---

**10.** Dr. Rabin stated that if steroids had been given at appellant's first visit, 80 to 90 percent of

her hair would have been saved. He also testified that if these drugs had been started at the

from which it could have assessed damages once it determined that Dr. Berzin was culpable. Finally, the court also made clear in *Graham* that the prerequisite to placing upon the defendant the burden to come forward with evidence to prove apportionment of damages is the existence of a culpable defendant. *Id.* The jury made no such finding of culpability in the instant case. Therefore, in view of the evidence from which a reasonable jury could fairly find that Dr. Berzin's course of treatment and diagnosis conformed with the standard of care in all respects, the circumstances giving rise to issuance of a *Graham* apportionment instruction did not exist.

Accordingly, because the jury's verdict in favor of Dr. Berzin on liability precluded it from addressing the measure of damages and a *Graham* instruction was inappropriate in light of the evidence before the jury, appellant's contention regarding the apportionment instruction is unavailing, and we affirm.

January 29 visit, "Probably she would not have lost maybe more than 35, 40 percent of her hair. She would not be bald." In addition, plaintiff's other expert testified that, although it was difficult to quantify the hair loss which could have been prevented by earlier treatment, he believed that most of the hair loss was attributable to Dr. Berzin's failure to diagnose and treat her condition earlier.