Geesey *v.* Albee Pennsylvania Homes, Inc.,
Appellant.

216

Argued September 11, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Alvin S. Ackerman,* for appellant.

*Jack A. Rounick,* with him *Israelit and Rounick,* for appellee.

OPINION BY HOFFMAN, J., November 16, 1967:

On or about February 12, 1964, plaintiff, a masonry contractor, was solicited by defendant's building supervisor to complete a half-built house belonging to one Frank LoPresti. Plaintiff testified that he and defendant's building supervisor inspected the site and reached an agreed price of $8200.00 to perform the required work.

Plaintiff completed the home and, subsequently, both orally and in writing, demanded payment from defendant. Defendant, however, informed plaintiff that

it would not pay, and that plaintiff's contract was with LoPresti, the owner of the house.

Plaintiff instituted suit on January 19, 1965, and after trial before a judge and jury, received a verdict of $8200.00. Defendant now appeals.

Defendant first contends that the trial judge erred "in allowing the plaintiff to introduce evidence of an express contract for a specific price where, in his complaint, plaintiff alleged a claim based upon quantum meruit." In conjunction with this argument, defendant contends that the judge erroneously charged the jury with respect to an express contract, when the plaintiff alleged a cause of action solely in quantum meruit.

In support of this point, appellant relies on *Zawada v. Pennsylvania System Board of Adjustment*, 392 Pa. 207, 140 A. 2d 335 (1958). We recently analyzed the *Zawada* case in *Lampl v. Latkanich*, 210 Pa. Superior Ct. 83, 231 A. 2d 890 (1967). In *Lampl*, a defendant claimed that the plaintiff could not recover in quantum meruit, because he chose to base his claim on a written contract. The defendant further noted that the words "quantum meruit" did not appear in the pleadings, and that written contracts were attached to them.

We pointed out that in *Zawada*, the trial court had refused to permit plaintiff to amend her pleadings to set up a count in quantum meruit after a verdict for defendant. The Supreme Court affirmed the case, because " 'the only possible implication' of the plaintiff's complaint was that she was suing on an express contract, the theory on which the case was tried. To permit such an amendment *after the verdict,* the Court held, would be highly prejudicial to the defendant." (p. 88)

We then went on to state: "In the instant case, however, the pleadings, fairly read, were sufficient to put the defendants on notice that quantum meruit was

the basis, or one of the bases, of the plaintiff's claim. Plaintiff's amended complaint, for example, seeks the *'reasonable value* of the services rendered' to the defendants, and includes an itemized statement of the work performed on their behalf.

"While it is true that copies of the written agreement are attached to the plaintiff's pleadings, this alone cannot constitute an 'election' as to his theory of recovery. At most, it signified that the plaintiff was proceeding in the alternative, both on the contract and in quantum meruit, as permitted by Rule 1020(c), Pa. R. C. P." (pp. 88-9)

We find that the instant case, while presenting the same contention in reverse (i.e., that plaintiff was proceeding in quantum meruit rather than contract), is very similar. Plaintiff's complaint alleged:

"3. At the special instance and oral request of the defendants, plaintiff did perform the work requested by defendants and supplied the materials for the performance of said work, in accordance with itemized statement of the account, a true and correct copy of which is attached hereto, made a part hereof and marked Exhibit 'A.'

"4. Defendants received and accepted the labor performed and materials supplied as set forth in Exhibit 'A.'

"5. The prices set forth in Exhibit 'A' are the fair reasonable and market prices for said labor and materials and the prices which defendants agreed to pay."

Thus, while the language of the complaint is generally that of an action in quantum meruit, it is sufficient to put the defendant on notice that the nature of the claim against him involved a prior agreement. Moreover, defendant's answer reflects that it understood plaintiff's allegation to be based on an oral contract with defendant. In response to paragraph 3 of

plaintiff's complaint, defendant pleaded the following answer:

"3. Denied. On the contrary, it is averred that *any contract, oral or written,* under which plaintiff performed work and supplied materials, was not with defendant. It is further averred that any request made of plaintiff or contract entered into with him was made by Frank A. LoPresti and or Mary LoPresti, his wife." (Emphasis supplied)

It is also significant to note that defendant, at trial, did not contest the quality of plaintiff's work or dispute the reasonableness of the $8200.00 bill. Thus, the trial involved only the simple question of whether the parties had an agreement. A careful reading of the record reflects that the parties understood this to be the sole issue and tried the case on that theory.

Indeed, defendant's collateral contention that the court erred by charging on contract rather than quantum meruit, further emphasizes the accuracy of this finding. Defendant was apparently satisfied with the charge at trial for it took no exception to it at that time. The general rule has always been that if no exception to the charge is taken at time of trial, the issue cannot be raised on appeal unless the error is basic and fundamental. *Leech v. Jones,* 421 Pa. 1, 218 A. 2d 722 (1966). Defendant was well aware of this issue during the trial. Frequent reference to it appears throughout the transcript. Its failure to take exception at that time convinces us, therefore, that not only was the judge's charge fair, but that it properly reflected the issues as they were drawn at trial.

Appellant next contends that the lower court erred in refusing to permit defendant to introduce evidence that plaintiff's attorneys had made claims against Mr. LoPresti, the owner, prior to making any claim against defendant.

On cross-examination, plaintiff acknowledged that he had consulted two attorneys to help him collect the debt. The following pertinent exchange then occurred:

"Q. And at your direction did Mr. Harmen [plaintiff's first attorney] then write to Martin Techner, a member of the Philadelphia Bar, who is Mr. Loprestie's attorney?

"A. That I don't know. That I do not know.

"Q. Did you tell Mr. Harmen that you had a contract with Mr. Loprestie?

"A. No, I did not.

"Q. If Mr. Harmen had written a letter to Mr. Techner on your behalf, would it not be because you told him that—

"MR. ROUNICK: Your Honor, I am going to object to this. . . [The objection was sustained.]

. . .

"Q. And did Mr. Butler [the second attorney] not, on your behalf and as your agent, write to the attorney for Mr. Loprestie demanding payment?

"A. That I do not know.

"Q. Now, sir, I show you this letter and ask you—

"MR. ROUNICK: Your Honor, I now object. He is doing the same thing.

"THE COURT: Objection sustained.

. . .

"Q. But you don't know what they [the lawyers] did for you?

"A. No, I do not.

"Q. Did you direct either of them to contact Mr. Techner?

"A. No, I did not.

"Q. Did you direct either of them to contact Mr. Loprestie?

"A. No, I did not.

"Q. Did you direct either of them to contact Albee Homes or any employee or officer of Albee Homes?

"A. No, I did not. I explained the situation to them that I had monies owed me from Albee Homes, and this is apparently what it was based on, and also my prime interest was as to—to have these attorneys, was to place a mechanic's lien on this home. This is the reason I went to both of these attorneys."

Reference to the above testimony reflects that the lower court correctly refused to admit letters which had allegedly been written by plaintiff's attorneys. Plaintiff unequivocally testified that he told his attorneys that defendant owed him money; he denied instructing the attorneys to write to Mr. LoPresti. He stated further that he did not know what or to whom his attorneys may have written in an attempt to collect the money.

On several occasions our court have considered admissions purportedly made by attorneys. In these opinions there emerges a great reluctance to admit such evidence in the absence of express authority by the client. The rule which has emerged from these cases is that, "If the admissions are made out of court and not in the presence of the client, authority to make them or knowledge or assent of the client thereto must be shown." 1 Henry, Evidence §96, pp. 143-44 (4th ed. 1953).

In *Mahler v. Singer*, 285 Pa. 540, 545, 132 A. 718 (1926), the Supreme Court stated: "We agree with the conclusion of the court below that this testimony as to declarations alleged to have been made by appellee's attorney was inadmissible. No authority was shown from his client which warranted the making of such a statement and the client was not present when it is alleged to have been made. As was said by the Superior Court in McGarry v. McGarry, 9 Pa. Superior Ct. 71, 'It would be an intolerable rule if it were to be held that the rights of clients could be divested by loose expressions of their attorneys.' Under the cir-

cumstances here shown, the declarations of the attorney should not have been received."

Similarly in *Conrad's Estate,* 333 Pa. 561, 3 A. 2d 697 (1938), the Supreme Court stated: "The letter of the attorney, without proof of his authority, is neither competent nor adequate to show failure of consideration. While an attorney has power to bind his client by his admissions and acts in the course of suit, or in management of the regular course of litigation, his statements or admissions out of court and not made in the conduct of litigation are generally not binding upon his client in the absence of express authority." See also *Malone v. Marano,* 326 Pa. 316, 192 A. 254 (1937) ; *Harrington v. Stivanson,* 210 Pa. 10, 59 A. 268 (1904).

In the instant case, plaintiff admitted that he had gone to the attorneys, but denied that he had authorized them to write to the owner or that he had knowledge of the contents of the letters written. In the absence of some evidence of express authority or knowledge and assent, the court properly excluded this evidence.

Defendant next contends that the lower court erred in refusing to permit defendant to introduce evidence that Mr. LoPresti, the owner, filed a petition in bankruptcy listing plaintiff as a creditor in the amount claimed in this action. Its purpose in introducing this evidence was to demonstrate that plaintiff did not proceed against defendant until he had realized that he was foreclosed from proceeding against LoPresti by the petition in bankruptcy.

This evidence would have required the introduction and proof at trial of several collateral issues: (1) that Mr. LoPresti had filed a petition in bankruptcy and that plaintiff was listed as a creditor on that petition; (2) that plaintiff gave no thought to proceeding against defendant prior to the receipt of this petition, a propo-

sition which plaintiff's counsel stated would be rebutted by witnesses; and (3) that plaintiff's attempts to collect from defendant arose directly out of his inability to collect from LoPresti.

It has long been the rule in this Commonwealth that it is the duty of the trial judge, in the first instance, to determine whether evidence which though logically relevant on the ultimate issue, may nevertheless be excluded, because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues; his decision will not be reversed on appeal in the absence of an abuse of discretion. *D'Allura v. Perri,* 138 Pa. Superior Ct. 261, 10 A. 2d 124 (1939).

The lower court excluded this evidence in the belief that it would lead the jury to explore if or why plaintiff was listed as a creditor in Mr. LoPresti's bankruptcy petition. It felt further that the jury might be led astray by the intricacies of bankruptcy schedules or might be confused by Mr. LoPresti's personal financial strategy. On the other hand, the inference which might be drawn from this evidence was, at best, remote and speculative. Under such circumstances, we cannot find that the lower court abused its discretion in excluding such evidence.

Defendant finally contends that the lower court erred in not sustaining its motion for nonsuit, because there was insufficient evidence to justify a verdict for the plaintiff. Reviewing the evidence, we find that there was sufficient evidence in plaintiff's testimony alone from which a jury might find that his contract was with defendant.

Judgment affirmed.