482 A.2d 615

**Sue Jojean HORTON, Appellant,**

**v.**

**Russell R. APPLEBY.**

Superior Court of Pennsylvania.

Submitted Feb. 24, 1984.

Filed Sept. 28, 1984.

John D. Miller, Jr., York, for appellant.

Russell E. Appleby, Airville, appellee, in propria persona.

Before SPAETH, President Judge, and CIRILLO and CERCONE, JJ.

SPAETH, President Judge:

This is a paternity action. Appellant, as the child's mother, brought the action against appellee, and a jury returned a verdict in favor of appellee. We have concluded that the trial court erred in admitting certain evidence of appellant's character. We therefore reverse and remand for a new trial.

**-1-**

■ Appellant argues that the trial court erred in admitting testimony that she was 16 years old at the time of conception. This argument is without merit. Appellant's age was one of the background facts of the case, and the court could not very well have excluded evidence of it. *See Gregg v. Fisher*, 377 Pa. 445, 454, 105 A.2d 105, 110 (1954)

("'Evidence is admissible which tends to ... show the origin and history of the transaction between the parties and explain its character.'" (quoting trial court opinion with approval)).

–2–

Appellant also argues that the trial court erred in admitting testimony that appellant was receiving public assistance and that the Department of Public Welfare required her to bring a paternity action in order to maintain her benefits. We agree with this argument, and since we are unable to say that the error was harmless, we reverse and remand for a new trial.

■ The evidence that appellant was receiving public assistance carried two inferences, both prejudicial to appellant: (1) that appellant was a lazy person; and (2) that appellant's child did not really need support payments because he would be taken care of through public assistance benefits if the jury failed to find in favor of appellant. The evidence was relevant only to the extent that it tended to show why appellant had brought a paternity action: if she did not, she would lose her public assistance benefits. This relevance, however, was marginal, for it did not tend to show any motive to bring a paternity action against appellee in particular. While appellant testified on cross-examination that she was told by the Department that as long as she was receiving public assistance, she "would have to take [appellee] to court," N.T. 18, on redirect-examination she explained that the Department did not require that she take appellee to court but only that she take the appropriate steps to establish paternity, no matter who the father was. N.T. 20. Given the prejudicial nature of the evidence and its marginal relevance, we hold that the trial court erred in admitting it. *Cf. Geesey v. Albee Pennsylvania Homes, Inc.*, 211 Pa.Super. 215, 235 A.2d 176 (1967) (trial court did not err in excluding evidence that plaintiff did not proceed against defendant until he realized that he was foreclosed from proceeding against third party by third party's petition

in bankruptcy; such evidence would confuse issue by distracting attention of jury to collateral issues).

We must still determine, however, whether the error was harmless. In making this determination, it is helpful to examine the other evidence in the case.

Appellant introduced into evidence the results of red blood cell tests and human leukocyte antigen (HLA) tests. A medical technologist testified that these tests resulted in a 96.92% likelihood of paternity and a 32 to 1 paternity index. N.T. 49. The technologist testified that a 32 to 1 paternity index means that appellee is 32 times more likely to be the father of appellant's child than a man chosen at random from the population. *Id.* He further testified that these figures make it "very likely" that appellee is the father of the child. N.T. 50.

Appellant testified that she had had sexual intercourse with appellee twice during the period of possible conception, and that she did not have sexual intercourse with any other man during that period. N.T. 4–5. Appellant further testified that on two occasions when she spoke with appellee concerning the pregnancy, he told her that he did not want her to have the child but wanted her to have an abortion. N.T. 6–7. Appellant further testified that appellee twice told her that he wanted her to say that she did not know who the father was so that he would not have to pay support. N.T. 7–8.

Appellee admitted knowing appellant and taking her out once and going to her house to play cards once, but he denied that they had ever had sexual intercourse and that he was the father of appellant's child. N.T. 59–60. A friend of appellee's girlfriend at the time of trial testified that appellant had told her during the pregnancy that someone else was the father. N.T. 62–64. Appellant testified on rebuttal that she had never said this. N.T. 65.

█ It therefore appears that the jury rejected the red blood cell and HLA test results and found in favor of appellee on the basis of its appraisal of appellant's credibili-

ty. In these circumstances, we cannot say that admission of the evidence that appellant was receiving public assistance was harmless error. In rejecting the test results and finding appellant incredible, the jury could well have been swayed by a dislike for appellant as lazy or a belief that her child would be adequately provided for even if a verdict was returned in favor of appellee.

–3–

 Appellant also argues that the trial court erred in admitting evidence that appellant rented a room in a house in which two men lived, and in allowing appellee's counsel to comment on this evidence in summation to the jury. We agree that this evidence was not admissible and that comment on it was improper. It is arguable that appellant has waived any objection to these errors. With respect to the testimony itself, appellant's counsel did not object to it at the time of its admission. Normally, any objection to the admission of inadmissible evidence is waived by the failure to object at the time it is admitted. *See Dudash v. Dudash,* 313 Pa.Super. 547, 460 A.2d 323 (1983). With respect to the reference to the testimony in summation to the jury, appellant's counsel did object at the time of the reference but he did not preserve the objection by raising it in his post-trial motion. Normally, any objection not raised in post-trial motions is waived and will not be considered on appeal. *See Sullivan v. City of Philadelphia,* 314 Pa.Super. 381, 460 A.2d 1191 (1983). Nevertheless, we shall consider appellant's objections because we are remanding for a new trial anyway and the error should not be repeated at the new trial.

On cross-examination of appellant, counsel for appellee elicited testimony that in January 1978 appellant had rented a room in a house in which two men lived, and after living there for a couple of months, had moved back to her mother's home. N.T. 12. (It should be noted at this point that the period during which appellant conceived was late October to early November 1978. N.T. 4.) Although the

summations to the jury were not transcribed, appellant's objection to comment on this testimony during appellee's summation, and the court's response, appear in the transcript as follows:

MR. MILLER: Objection, your Honor. I don't think there was any testimony that she lived in that sense with two other—I think there was testimony she rented. THE COURT: Well, counsel can argue that testimony was that she lived in the same household. It's a permissible argument, but the jury can use their own recollection as to the actual testimony.

N.T. 66.

We agree with appellant that the testimony was not relevant and that its admission and the comment on it were improper. The only inference to be drawn from the testimony was that appellant was a bad person because she had lived with two men some time before becoming pregnant. Of course, evidence that appellant had had sexual intercourse with a man, or men, other than appellee during the period of possible conception would have been relevant. *See Commonwealth v. Rankin,* 226 Pa.Super. 37, 311 A.2d 660 (1973); *Commonwealth v. Harbaugh,* 201 Pa.Super. 360, 191 A.2d 844 (1963). However, there was no evidence, either that appellant had had an intimate association with either of the two men, or that she had lived in the rented room during the period during which she conceived. *Cf. Commonwealth v. Boggio,* 204 Pa.Super. 434, 205 A.2d 694 (1964) (trial court did not err in excluding evidence that prosecutrix had intercourse with a third person during a three year period not within the possible period of conception).[1]

1. In its opinion at page 4 the trial court states:
 The specific testimony to which the Plaintiff objects, was the inquiry of her concerning her having two male roommates at or near the time of probable conception. When it appeared that this situation, if it existed at all, was some months prior to the time of conception, the Court cautioned the jury that any such testimony could not be considered by them in determining paternity but should be disregarded unless they were satisfied that the Plaintiff had in fact

Order reversed; case remanded for new trial; jurisdiction relinquished.

been sexually intimate with some other male during the critical period.

The trial transcript does not reveal that any cautionary instruction was given at the time this testimony was elicited. The court did state in its charge to the jury: "The question is not the morality of any of the parties. The question is not whether they are nice people or not. The only question is whether or not the Defendant is the father of the child." N.T. 69. The trial court also stated in the charge: "Now, a third issue or point is, did the Plaintiff have sexual relations with other men during the conception period and, if so, is that man or one of them the father of the child?" N.T. 75. We do not believe, however, that these general statements were sufficient to overcome the prejudice from the admission of the evidence and appellee's counsel's comment on it.