**Karl GREEN, Plaintiff–Appellant,**

v.

**DENVER & RIO GRANDE WESTERN RAILROAD COMPANY, Defendant–Appellee.**

**No. 93–4073.**

United States Court of Appeals, Tenth Circuit.

July 3, 1995.

---

Norman R. Mueller of Haddon, Morgan & Foreman, Denver, CO (John Rossi of Morrisard, Rossi, Cox, Kiker & Inderwish, Aurora, CO, with him on the briefs), for plaintiff-appellant.

E. Scott Savage (Casey K. McGarvey, also of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, with him on the brief), for defendant-appellee.

Before SEYMOUR, Chief Judge, LOGAN and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Karl W. Green brought this action against defendant, The Denver & Rio Grande Western Railroad Co. (the Railroad), under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. Plaintiff alleged that because of the Railroad's negligence, he suffered a permanently disabling injury. Plaintiff appeals from the unfavorable jury verdict, asserting that the district court erred in: (1) ruling railroad disability payments were not a collateral source and therefore were admissible into evidence; (2) refusing to instruct the jury that violation of safety rules may be considered "as negligence"; and (3) refusing to allow one of plaintiff's experts to testify. Because our disposition requires a new trial, and we believe the third issue is unique to the first trial, we discuss only the first two issues.

I

On the morning he was injured, plaintiff was working as a train engineer with a Railroad crew building a train. Plaintiff testified that he was sitting in the switch engine at the end of the train when it moved unexpect-

edly[1], throwing him from his pedestal seat and hitting his head and back on the rear of the cab. As he tried to get up to check the controls and the brakes, the train moved again and he hit his head and back a second time. Plaintiff asserted that the movements of the engine were caused by "slack action,"[2] although eyewitnesses[3] testified that they never observed or heard any significant slack action. The jury found no negligence and returned a verdict for the Railroad.

## II

### A

■ Plaintiff asserts that the district court erred in ruling plaintiff's Railroad Retirement Act (RRA) disability benefits are not a collateral source, and thus were admissible as evidence of an allowable offset to any damages that might be awarded. The Railroad argues that plaintiff failed to preserve this issue for appeal.

After determining the RRA payments were admissible, the district court instructed plaintiff's attorney.

> [Y]ou can either present your economic damages claim and only include the amount that is over and above the disability payments he is receiving ... and then the jury never hears about it; or if you choose to put it on, then the defendants are entitled to point out that his economic loss in the future is not as high as represented by you and your experts because he is already receiving a percentage of what he would have earned had he not been injured.

V R. 157. Plaintiff's attorney responded that "I want it understood that whether we go either way that the Court has allowed me an alternative, by doing that that I am not agreeing that that is the correct method. I still feel strongly that the Court is in error and that that is collateral source and should not come in." *Id.* at 158. The district court responded:

> It will be clear that you're not waiving anything by electing to go any way you go ... but it would be preferable to not bring it up at all because we would eliminate any Rule 403 problems of confusion and unfair prejudice and so on. But I'll leave it up to you.... I think it either comes in or it does not.

*Id.* at 159.

After presenting expert testimony of total damages, plaintiff's attorney resumed the exchange with the district court.

> As far as the annuity, I am going to offer this testimony, and it will be covered over the course of the testimony as $1,470.18 a month as a railroad annuity. And I want the record to reflect that the plaintiff is not waiving his right here. We feel that we have preserved that through the objection and we stated that yesterday, but we would make an objection now that it is inadmissible and should not be brought in, and understanding the Court's ruling and our options, and that is one of the options you have made available for us to make and I choose to go that way.

> THE COURT: All right. I think the record was clear before. But it is so noted.

---

**1.** Although plaintiff testified that he was not aware that the front engine was preparing to move the train, other crew members testified that several radio transmissions had announced the move. These witnesses also testified that throughout the shift plaintiff had responded appropriately to other radio communications, and that they were not aware of any problems with radio communications.

**2.** Slack action is a function of the way the coupling mechanisms hook railroad cars together. Each coupler has a drawbar which moves forward and backward in the sleeve in which it is housed. This "play" allows railroad cars to round curves without derailing. When cars are connected, they can be stretched out or bunched together by the movements of an engine. If an engine begins to pull a bunched train, each car will jerk forward as the slack is taken out in every drawbar; this can produce a violent movement at the end of the train.

**3.** These eyewitnesses included Arden Brimhall, William Kranwinkle and James Thomas, members of plaintiff's crew, and James Cordner, engineer of the front engine, and Duane Wanless, assistant train master directing train movement from the tower.

VI R. 464. Plaintiff's economist then testified about the RRA disability annuity pension. Although plaintiff introduced evidence of the RRA disability benefits that he initially sought to exclude as a collateral source, the record supports the conclusion that plaintiff preserved this issue for appeal.

### B

■■■ The collateral source rule allows a plaintiff to seek full recovery from a tortfeasor even though an independent source has compensated the plaintiff in full or in part for the loss. The rationale for the rule is at least two-fold: First, public policy favors giving the plaintiff a double recovery rather than allowing a wrongdoer to enjoy reduced liability simply because the plaintiff received compensation from an independent source. *FDIC v. United Pac. Ins. Co.*, 20 F.3d 1070, 1083 (10th Cir.1994). Second, by assuring a plaintiff's payments from a collateral source will not be reduced by a subsequent judgment, the rule encourages the maintenance of insurance. *Quinones v. Pennsylvania Gen. Ins. Co.*, 804 F.2d 1167, 1171 (10th Cir.1986). The collateral source rule generally does not apply "when the collateral source is somehow identified with the tortfeasor ... in a suit against the tortfeasor." *Id.* at 1171. Under those circumstances the additional compensation will be used to offset tortfeasor liability because "it is as if the tortfeasor himself paid." *Id.* at 1172.

Our cases have always treated payments from the public treasury, at least when funded by a tax scheme to which the injured party contributed, as from a collateral source. *See Steckler v. United States,* 549 F.2d 1372, 1379 (10th Cir.1977) (social security disability payments); *EEOC v. Sandia Corp.,* 639 F.2d 600, 625, 626 (10th Cir.1980) (state unemployment compensation); *EEOC v. Wyoming Retirement System,* 771 F.2d 1425, 1431–32 (10th Cir.1985) (social security

payments). *Sandia* and *Wyoming Retirement System,* both Age Discrimination in Employment Act cases, treated the use of such payments to reduce back pay judgments against defendants as a matter for the trial court's discretion. *Sandia* upheld the district court's refusal to offset state unemployment compensation payments plaintiff received. While acknowledging that making a setoff discretionary with the district court was a "somewhat questionable" approach, 639 F.2d at 625–26, the *Sandia* panel thought that approach was required by *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951). *Wyoming Retirement System* upheld the discretionary reduction of a back pay award by the amount of social security benefits plaintiff received by drawing a distinction between purely private litigation and one where "the state was a party and tax funds were at stake." 771 F.2d at 1431–32.

*Berg v. United States,* 806 F.2d 978 (10th Cir.1986), a Federal Tort Claims Act case, dealt with the issue whether medicare benefits paid by the government should be deducted from a judgment when the litigation is with the government. To avoid the setoff, *Berg* ruled that the plaintiff needed to show "only that he or she contributed to a special fund that is separate and distinct from general governmental revenues." *Id.* at 985. *Berg* concluded that medicare benefits derived in part from social security taxes paid by the plaintiff were collateral and not to be used to reduce the judgment against the United States.[4] Thus, *Berg* did not view the determination whether to allow setoff as discretionary.

■■■ If there is confusion in our cases it is unimportant, because we believe Supreme Court precedent controls this issue. As plaintiff asserts, *Eichel v. New York Central R.R.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), compels the conclusion that the

---

**4.** In *Berg*, in determining medicare benefits are collateral when a plaintiff contributed to the fund, we narrowed our earlier holding in *Steckler v. United States*, 549 F.2d 1372 (10th Cir.1977), that social security disability payments were a collateral source and not deductible from damages otherwise payable to the plaintiff, except to the extent that those payments could be attrib-

uted to the government defendant. In *Berg*, we recognized "that it is in fact impossible to distinguish accurately which part of a fund that has been produced by millions of contributions is attributable to the government and which part is attributable to a particular injured party." 806 F.2d at 985.

collateral source rule prohibits admission of RRA disability benefits in a FELA case. The narrow issue in *Eichel* was whether evidence of RRA disability payments was admissible to show malingering by the plaintiff. The Supreme Court stated that "the likelihood of misuse by the jury clearly outweighs the value of this evidence" and noted that it had "recently had occasion to be reminded that evidence of collateral benefits is readily subject to misuse by a jury." *Id.* at 255, 84 S.Ct. at 317. (citing *Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963)). More to the point of the case before us, the Supreme Court stated that because the RRA is essentially social security for common carrier employees, benefits were not directly attributable to contributions by the defendant railroad, and thus could not be considered in mitigation of damages caused by the railroad. *Id.* at 254, 84 S.Ct. at 316–17 (quoting *New York, N.H. & H.R. Co. v. Leary*, 204 F.2d 461, 468 (1st Cir.1953)).

The Railroad characterizes as dicta the *Eichel* Court's statement that "it would be highly improper for the [RRA] disability pension payments to be considered in mitigation of the damages suffered." 375 U.S. at 254, 84 S.Ct. at 317. However, that statement was necessary to the holding that admission of evidence of those payments to prove malingering was not harmless. We hold, therefore, that plaintiff's RRA disability annuity pension was a collateral source and not admissible to offset any damages award he might have received.[5]

## C

■ Defendant alternatively argues that even if the RRA disability payments were a collateral source, admitting evidence of those payments was harmless because the jury found no liability. Several other circuits have addressed this issue and determined that admission of collateral source payments was not harmless. *See Phillips v. Western*

*Co. of N. America*, 953 F.2d 923, 925 (5th Cir.1992) (if benefits were collateral source "and subject to exclusion, their inclusion as part of the defendant's case—and the lack of a limiting instruction—raises the possibility that the jury improperly factored the evidence into its determination of [no] liability"); *Reed v. Philadelphia, Bethlehem & New Eng. R.R.*, 939 F.2d 128, 134 (3d Cir.1991) (introduction of disability payments to a railroad employee was reversible error even when no damages were awarded because the "'likelihood of misuse by the jury clearly outweigh[ed] the value of this [collateral source] evidence.'") (quoting *Eichel*, 375 U.S. at 255, 84 S.Ct. at 317), *cert. denied*, —— U.S. ——, 113 S.Ct. 1584, 123 L.Ed.2d 151 (1993); *Wilcox v. Clinchfield R.R.*, 747 F.2d 1059, 1060–61 (6th Cir.1984) in FELA case, it was reversible error for judge to inform jury, in response to questions, that plaintiff received medical expense payments: "Both *Tipton* [*v. Socony Mobil Oil Co.*, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963) ] and *Eichel* reflect a strong policy against the use of such collateral source evidence in FELA and analogous Jones Act-maritime seamen's cases." (quoting *Page v. St. Louis Southwestern Ry.*, 349 F.2d 820, 822 (5th Cir.1965)); *Sheehy v. Southern Pac. Trans.*, 631 F.2d 649, 651–53 (9th Cir.1980) (holding, in FELA action, that Fed.R.Evid. 403 did not authorize departure from *Eichel*; therefore it was error for district court to allow evidence of collateral benefits to show malingering, and limiting instruction that informed jury it could not reduce award by amount of collateral benefits did not cure possible error, citing *Tipton* ).

The major reason for excluding collateral source evidence is the concern that juries will be more likely to find no liability if they know that plaintiff has received some compensation. As the Fifth Circuit stated in *Phillips*, "[t]he jury may feel that awarding damages would overcompensate the plaintiff for his injury ... and may factor this into

---

5. *See also Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 200 (8th Cir.1981) (applying *Eichel* rule that in FELA actions, "collateral source payments are inadmissible as bearing on the extent or duration of disability," and upholding district court's ruling that evidence of social security and pension disability payments were inadmissible as was fact that plaintiff would not accept employment that paid less than those benefits), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982).

the liability calculus. This concern compels us to reject [the] suggestion that, even if introduction of post-accident benefits was error, it had no effect on the jury's finding of no negligence and therefore constituted a form of harmless error." 953 F.2d at 930.

Further, the district court here gave no instruction to the jury limiting the use of the disability payments to determinations on damages, and/or cautioning them not to consider disability payments in their deliberations on negligence. Although defendant's counsel did not argue to the jury that the disability benefits might result in a double recovery for plaintiff, *cf. Phillips,* 953 F.2d at 930, we believe that the admission of such evidence, particularly without any limiting instruction, was reversible error.

### III

Plaintiff asserts the district court erred in refusing to instruct the jury that violation of safety rules may be negligence. Because the problem could arise again in the same form at retrial we will rule on the issue. We review the district court's refusal to give a jury instruction for an abuse of discretion. *See Durtsche v. American Colloid Co.,* 958 F.2d 1007, 1011 (10th Cir.1992). Instructions must be considered as a whole; we will not reverse unless any errors are prejudicial. *See United Pac. Ins. Co.,* 20 F.3d at 1077.

In *Parra v. Atchison, T. & S.F. Ry.,* 787 F.2d 507, 509 (10th Cir.1986), we stated that an alleged violation of a specific, objective safety rule could warrant an instruction on negligence per se. However, in *Parra* we upheld the district court's refusal to give the tendered instruction because the safety rule at issue was not specific enough to supply a standard the jury could apply.

The instruction tendered by plaintiff in the instant case stated: "If any employees of the Defendant, The Denver & Rio Grande Western Railroad, violate *any* rules or regulations of the Defendant, you may consider this as negligence against the Defendant." Appellant's App. 82 (emphasis added). The broad language of this instruction fails to limit the jury to consideration of specific, objective

safety rules.[6] The proposed instruction would allow a finding of negligence without requiring the jury to find the rule violation contributed to the injury. Further, the instructions actually given, as a whole, properly defined negligence. Therefore, we cannot conclude that the court's failure to give instruction 40, tendered by plaintiff, prejudiced him or that the district court abused its discretion in refusing to give the proffered instruction.

REVERSED and REMANDED for further proceedings in accordance with this opinion.

---

6. On appeal plaintiff asserts that defendant violated its Rules 61–B, 801, and O.