1999 UT 109

**Stephen M. ROBINSON, Plaintiff and Appellant,**

v.

**ALL–STAR DELIVERY, INC., and Ashlee Koew, Defendants and Appellees.**

No. 981563.

Supreme Court of Utah.

Dec. 28, 1999.

Peter C. Collins, Tara L. Isaacson, James E. Morton, Salt Lake City, for plaintiff.

Joseph J. Joyce, Kristin A. Van Orman, Victoria Kidman, Salt Lake City, for defendants.

STEWART, Justice:

¶1 Plaintiff Stephen Robinson appeals from a jury verdict against defendants All–

Star Delivery, Inc., and Ashlee Koew.[1] Robinson argues that the trial court committed reversible error by refusing to give a proposed jury instruction and allowing prejudicial evidence to be admitted. He seeks a new trial on damages. We affirm in part and reverse in part.

## I. FACTS

¶ 2 We present the facts and all reasonable inferences drawn therefrom in the light most favorable to the jury verdict. *See State v. Dunn*, 850 P.2d 1201, 1205–06 (Utah 1993). In September 1995, Koew, an All–Star Delivery employee, rear-ended Robinson at a stop light in Salt Lake City. Koew was driving a Chevrolet Blazer, a sport utility vehicle, while Robinson was driving a Ford Fairlane station wagon.

¶ 3 Robinson was no stranger to car accidents. In November 1991, he was involved in a serious accident in which he was thrown 50 feet from his car and knocked unconscious. He sustained severe skull, hip, and femur fractures; underwent almost twenty surgeries; and spent nearly two years in the hospital.

¶ 4 Robinson sued All–Star Delivery and Koew, claiming the 1995 accident aggravated his preexisting injuries and caused new injuries. Defendants admitted liability and stipulated special damages in the amount of $3800, leaving the issue of general damages, i.e., Robinson's pain and suffering, to the jury.

¶ 5 At trial, the parties presented conflicting evidence as to whether Robinson's injuries arose from the 1991 accident or the 1995 accident. Dr. Horne, Robinson's treating physician, testified for Robinson that before the 1995 accident Robinson complained mostly of headaches and hip, leg, and neck pain. The day after the 1995 accident Robinson reported neck, upper and lower back, and leg pain. Dr. Horne diagnosed a possible refracture of the previous femur fracture, a lower back strain and sprain, and a compression fracture in the neck. Dr. Horne

opined that the 1995 accident caused or aggravated Robinson's injuries to his leg, neck, and lower back. However, he acknowledged that he would have expected, due to the serious nature of Robinson's leg pain from the 1991 accident, that Robinson would still have felt leg pain in 1995. Furthermore, because Dr. Horne had not seen x-rays of Robinson's neck taken before the 1995 accident against which to compare the post-accident x-rays, he admitted the neck fracture could be preexisting. Finally, Dr. Horne testified that Robinson's lower back sprain was a category 1 sprain on a scale of 1–4 with 4 being the most severe.

¶ 6 Dr. Chung, an independent medical examiner, testified for defendants based on an extensive review of Robinson's medical records and a personally conducted patient history and physical examination. Dr. Chung concluded that it was more likely than not that Robinson's neck, back, and leg injuries each stemmed from the serious 1991 accident. However, Dr. Chung acknowledged that the 1995 accident could have caused a "flare up" or "some increase" in pain to Robinson's preexisting injuries.

¶ 7 Robinson testified that while he had previously been in pain from his 1991 accident, he had felt no leg, neck, or back pain immediately prior to the 1995 accident. Within ten minutes after the accident, however, Robinson said he felt pain in his leg, neck, and back. The neck pain lasted only two weeks. The leg pain lasted until October 1996—over a year after the 1995 accident—when he underwent leg surgery that Dr. Horne had first recommended in 1993. Robinson had declined the surgery because of his busy school schedule. The back pain, Robinson testified, still existed at the time of trial in May 1998, exacerbated by the fact that he worked at a desk job as a computer network administrator. Despite the ongoing back pain, Robinson stopped visiting Dr. Horne one month after the 1995 accident, and stopped going to physical therapy for his back three months after the 1995 accident. As to the severity of the pain, Robinson

[1]. Ms. Koew's last name is now Wilkes, but we will refer to her as Koew to be consistent with the case caption.

stated that it had not required him to miss time from work; nor had it impeded his participation in major life activities, except for stream fishing and walking sports. Finally, Robinson testified that his back pain was not severe enough to warrant the epidural injections that Dr. Horne felt would have been 70–80% successful in reducing his back pain.

¶ 8 The jury awarded Robinson $1000 in general damages. Robinson argues that the trial court erred by (1) not giving his proposed jury instruction on aggravation of preexisting conditions; and (2) allowing evidence to be admitted that Robinson had received social security disability benefits after the 1991 accident and that Koew was not injured in the 1995 accident.

## II.  OBJECTION TO JURY INSTRUCTION

■ ¶ 9  Robinson argues that the trial court erred in not giving his proposed instruction on aggravation of preexisting damages. We review a judge's refusal to give a jury instruction for correctness, as it is a question of law. *See Tingey v. Christensen,* 1999 UT 68, ¶ 10, 987 P.2d 588; *Ong Int'l (USA) Inc. v. 11th Ave. Corp.,* 850 P.2d 447, 452 (Utah 1993).

¶ 10  Robinson's proposed instruction stated:

> When a pre-existing condition exists which makes the injurious effect of a collision greater than it would have been in the absence of such a pre-existing condition, it is your duty, if possible, to apportion the amount of disability and impairment, pain and suffering, and other damages, between those attributable to the pre-existing condition and those attributable to the collision. *But if you find that the evidence does not permit such an apportionment, then you must determine that the entire disability, pain and suffering, and other damages, are attributable to the collision.*

(Emphasis added.)  The instruction actually given was based on *Model Utah Jury In-*

*struction,* Civil 27.6 (1993), and differs from the proposed instruction in material respects. It stated:

> A person who has a condition or disability at the time of an injury is not entitled to recover damages for that condition or disability. However, the injured person is entitled to recover damages for any aggravation of such pre-existing condition or disability proximately resulting from the collision.
>
> This is true even if the injured person's condition or disability made the injured person more susceptible to the possibility of ill-effects than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury.
>
> When a pre-existing condition or disability is aggravated, damages for the condition or disability are limited to the additional injury caused by the aggravation.

¶ 11  In *Tingey,* this Court held that an instruction identical to Robinson's proposed instruction correctly stated the law. *Tingey* explained the basis for that instruction:

> [It] follows from several legal principles: first, a tortfeasor takes a tort victim as he or she finds the victim; second, a tortfeasor should bear the burden of uncertainty in the amount of a tort victim's damages; and third, once the fact of damage is established, a defendant should not escape liability because the amount of damage cannot be proved with precision.

*Tingey,* 1999 UT 68, ¶ 14, 987 P.2d 588 (footnote, citations, and internal quotations omitted).

¶ 12  We also observe that the apportionment rules outlined in the proposed instruction are supported by the Restatement (Second) of Torts.  Section 433A, Apportionment of Harm to Causes,[2] states:

> (1) Damages for harm are to be apportioned among two or more causes where
>
> (a) there are distinct harms, or
>
> (b) there is a reasonable basis for determining the contribution of each cause to a single harm.
>
> (2) Damages for any other harm cannot be apportioned among two or more causes.

---

2.  Comment a to § 433A indicates that the apportionment rules apply "where the negligence of a defendant combines ... with a pre-existing con-

dition which the defendant has not caused, to bring about the harm to the plaintiff." *Id.* at cmt. a.

Restatement (Second) of Torts § 433A (1965). Regarding subsection (2), comment i explains:

> Certain kinds of harm, by their very nature, are normally incapable of any logical, reasonable, or practical division.... By far the greater number of personal injuries ... are thus normally single and indivisible. Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm.

*Id.* at cmt. i.

■ ¶ 13 Of course, as with any jury instruction, the facts of the case must merit the proposed instruction.[3] For example, in a case where damages are clearly apportionable, the proposed instruction need not be given. *See McDonald v. United Airlines, Inc.*, 365 F.2d 593, 594 (10th Cir.1966); *LaMoureaux v. Totem Ocean Trailer Exp., Inc.*, 632 P.2d 539, 544–45 (Alaska 1981); *McNabb v. Green Estate Co.*, 62 Mich.App. 500, 233 N.W.2d 811, 819–20 (1975); *Bigley v. Craven*, 769 P.2d 892, 895–98 (Wyo.1989).

■ ¶ 14 In the instant case, the evidence was in conflict as to the apportionability of the damages. Dr. Horne testified that the 1995 accident caused most of Robinson's damages. Dr. Chung testified that the 1991 accident caused Robinson's injuries. Thus, the trial court should have instructed the jury on what to do if it was unable to apportion damages in a reasonable manner.

---

3. The dissent argues that the plaintiff must make a specific showing of impossibility of apportionment before this instruction may be given. There are two problems with the position of the dissent.

First, the dissent relies heavily on *LaMoureaux v. Totem Ocean Trailer Exp., Inc.*, 632 P.2d 539 (Alaska 1981), and the reliance is misplaced. The facts of that case are critically different from the facts of this case. LaMoureaux, the plaintiff, never told the treating physicians that he had previously suffered from similar injuries. Additionally, at trial, LaMoureaux did not ask a single expert witness to apportion between the accident and his preexisting condition. In the instant case, however, Dr. Horne had treated plaintiff for both the 1991 accident and the 1995 accident and was therefore aware of the preexisting injuries. In addition, Dr. Horne testified about the apportionability of the damages to the 1995 accident.

Furthermore, the jury instruction that LaMoureaux requested, and the Alaska Supreme Court rejected, is vastly different from the instruction at issue here. LaMoureaux's instruction stated:

> Where a pre-existing condition, disability or infirmity has been aggravated, activated, or accelerated by the collision, the Defendants must prove by a preponderance of the evidence what expenses, pain, suffering, disability, or impairment are attributable solely to Plaintiff's condition at the time of the collision.... [If Defendants don't meet their burden, they are liable for the entire disability.]

*Id.* at 543 n. 5. This instruction would result in a shifting of the burden of proof. The Alaska Supreme Court's reaction to the proposed instruction is not surprising. No doubt we would condemn it just as strongly. The fact is that the court was not responding to a *Newbury*-type instruction, as Justice Russon suggests. Viewed in the correct factual context, *LaMoureaux* does not contradict our holding. *LaMoureaux* simply held "there was no evidence or indication that apportionment was impossible, so there was no basis in the record for giving the requested instruction." *Id.* at 545. In the instant case, however, there was ample evidence, considering both the plaintiff's and defendant's cases, that apportionment might be impossible.

The second problem with the dissent's position is that it requires a plaintiff to undermine his own case. For instance, Robinson, the plaintiff, presented expert testimony that his injuries primarily resulted from the second accident. According to Justice Russon, Robinson should then also present expert evidence showing that, despite what the first expert just said, it is actually impossible to determine where his injuries came from, i.e., they can't be apportioned. Obviously, the two positions are inconsistent and undermine each other. Thus, plaintiffs must choose between arguing impossibility of apportionment or that damages should be apportioned to one particular cause. It makes little sense to impose such a choice on the plaintiff when all the evidence presented at trial by plaintiff and defendant implicitly raises the possibility that the damages were impossible to apportion. If one expert testifies the damages were largely caused by the second accident and the other expert testifies the damages were caused by the first accident, it stands to reason that the jury may not be able to rationally apportion the damages in light of the credible, yet conflicting, testimony. Justice Russon's position denies the plaintiff the right to have the jury instructed on the basis of both plaintiff's and defendant's evidence when that evidence suggests the impossibility of apportionment. There is no principled reason for doing so.

¶ 15 Based on *Tingey* and the principles stated above, it follows that the trial court erred in not giving Robinson's proposed instruction. We must now determine whether that error warrants reversal.

¶ 16 We have previously stated the circumstances in which a refusal to give a jury instruction is reversible error:

We may reverse a trial court judgment only if there is a reasonable likelihood that, absent the error, there would have been a result more favorable to the complaining party. The failure to give an instruction to which a party is entitled may constitute reversible error only if it tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law.

*In re Kesler*, 702 P.2d 86, 96–97 (Utah 1985) (citing *Lee v. Mitchell Funeral Home Ambulance Serv.*, 606 P.2d 259, 261 (Utah 1980); *Rowley v. Graven Bros.*, 26 Utah 2d 448, 451, 491 P.2d 1209, 1211 (1971); *State v. Ouzounian*, 26 Utah 2d 442, 444, 491 P.2d 1093, 1095 (1971); *In re Estate of Richards*, 5 Utah 2d 106, 111, 297 P.2d 542, 545 (1956)).

¶ 17 The trial court's refusal to give Robinson's proposed instruction left the jury without the necessary principles for deciding how damages should be apportioned, if at all. Because the jury might have awarded more damages under the proposed instruction, the failure to give it resulted in prejudice to Robinson. In *Bigley v. Craven*, 769 P.2d 892 (Wyo.1989), an automobile accident case involving a plaintiff with preexisting injuries, the trial judge failed to give an instruction on apportionment of damages that was essentially identical to the instruction Robinson proposed.[4] The jury awarded the plaintiff $9100, and the plaintiff appealed. The Wyoming Supreme Court reversed, holding that the trial court erred in not giving the proposed instruction. The error was prejudicial because,

[i]n the face of conflicting evidence on apportionment of damages, the trial court instructed the jury it could award damages only for the aggravation of the preexisting condition, not the preexisting condition itself. Had the jury been properly instructed on this issue, it may have awarded damages for that preexisting condition as well. We will not speculate on what may have been the basis for the jury's verdict. . . .

*Id.* at 898 (internal quotations omitted).

¶ 18 In the instant case, the jury awarded $1000 in general damages. The trial court instructed the jury to award Robinson damages only for the aggravation of preexisting injuries, and did not give the jury the option, if it found the damages unapportionable, to award the full damages allowed by law. The testimony at trial conflicted as to the cause or causes of Robinson's damages. Robinson's expert testified that the injuries arose from the 1995 accident, but indicated that some of the pain could have stemmed from the 1991 accident. Defendants' expert testified that Robinson's injuries resulted from the 1991 accident, but explained that the 1995 accident could have "flared up" or "increased" the pain from those injuries. It is impossible to analyze how the jury came to award $1000 in general damages. However, there is a reasonable likelihood that, had the proper instruction been given, the jury might have awarded more in general damages to cover some of Robinson's preexisting injuries. We conclude, therefore, that the error was not harmless.

¶ 19 Our ruling on the prejudicial effect of not giving the proposed instruction in this case does not conflict with our ruling on that point in *Tingey*. The cases are factually distinguishable. Tingey had suffered injuries in a previous, serious accident. He alleged injuries and aggravation of his preexisting injuries due to a second, minor accident. The trial court failed to give Tin-

---

4. The proposed instruction in *Bigley* stated:
When there is a pre-existing condition, and where trauma aggravates the pre-existing condition, and no apportionment of the disability between that caused by the pre-existing condition and that caused by the trauma can be made, in such case, even though a portion of the present and future disability is directly attributable to the pre-existing condition, the defendant whose act or negligence was the cause of the trauma is responsible for the entire damage.
*Bigley*, 769 P.2d at 894.

gey's proposed instruction on apportionment of damages. Although we held that Tingey's instruction should have been given to the jury, we also held that Tingey was not prejudiced by the failure to give the instruction. The error was harmless because the jury

> made clear that it did not believe Tingey suffered *any* pain and suffering from the [second] accident. This is shown by its initial award of $0 in general damages and its subsequent award of only $1 in general damages after being specifically instructed to award something for Tingey's pain and suffering from the [second] accident. *Thus, after hearing substantial evidence on Tingey's injuries and discussing twice whether her pain and suffering arose from the [second] accident or her previous injuries, the jury awarded Tingey only nominal damages for pain and suffering from the [second] accident.*

*Tingey,* 1999 UT 68, ¶ 17, 987 P.2d 588 (emphasis added).

¶ 20 The jury twice found that Tingey suffered no pain and suffering at all from her second accident. Accordingly, the jury would not have given a more favorable verdict had the proposed instruction been given.

## III. OBJECTIONS TO EVIDENTIARY RULINGS

¶ 21 Robinson also claims that the trial court erred in not granting two motions in limine to exclude certain evidence asserted to be irrelevant and unduly prejudicial, namely, that (1) Robinson received social security disability benefits after his previous accident and that (2) Koew was not injured in the 1995 accident. Because these issues may arise again in Robinson's new trial on damages, we address them to avoid the possibility of another appeal raising the same issues. *See State v. Emmett,* 839 P.2d 781, 786 (Utah 1992); *State v. James,* 819 P.2d 781, 795 (Utah 1991); *State v. Tarafa,* 720 P.2d 1368, 1370 (Utah 1986).

### A. *Evidence of Plaintiff's Receipt of Disability Benefits*

¶ 22 Robinson's motion in limine requested that any evidence that Robinson "ever received Social Security disability income, unemployment benefits, or any 'welfare' payments" subsequent to his first accident be excluded because it was irrelevant and prejudicial. The trial court denied Robinson's motion as to the social security disability benefits.

¶ 23 Under Rule 403 of the Utah Rules of Evidence, relevant evidence should be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Evidence that Robinson received disability benefits is potentially very prejudicial. *See, e.g., People v. Henderson,* 408 Mich. 56, 289 N.W.2d 376, 380–81 (1980) (stating that evidence of dependence on public welfare is highly prejudicial: "There is a risk that it will cause jurors to view a defendant as a 'bad man'—a poor provider, a worthless individual." (citations omitted)); *Horton v. Appleby,* 333 Pa.Super. 375, 482 A.2d 615, 617 (1984) (holding trial court erred in admitting evidence of receipt of public assistance given "the prejudicial nature of the evidence and its marginal relevance"). In *Eichel v. New York Central R.R. Co.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), a negligence suit, the defendant wanted to present evidence that the plaintiff was receiving disability pension payments in order to show "the extent and duration of the disability" and a motive for the plaintiff's reluctance to return to work. *Id.* at 254–55, 84 S.Ct. 316. The Supreme Court ruled that the evidence should be excluded utilizing the same balancing approach embodied in Rule 403:

> In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension.

*Id.* at 255, 84 S.Ct. 316 (footnotes omitted). The instant case presents a similar situation. The disability benefits evidence has minimal bearing on Robinson's preexisting injuries. The testimony provided by Robinson, Dr. Thorne, and Dr. Chung is far more probative and much less prejudicial. Under *Eichel* and the other cases cited above, the prejudicial

effect of the evidence outweighs its probative value. Furthermore, such evidence could too easily be used for improper purposes. For example, considering that defendant may be held liable for all plaintiff's damages, including the preexisting conditions, the jury might "be more likely to find no liability if they know that plaintiff has received some compensation" for those preexisting conditions. *See Green v. Denver & Rio Grande Western R.R. Co.*, 59 F.3d 1029, 1033 (10th Cir.1995).[5]

¶ 24 In their briefs, the parties argue whether Robinson waived his right to appeal the trial court's evidentiary ruling by being the first to mention the social security disability benefits at trial.[6] We need not address the waiver issue here. The attempt to exclude the evidence was made by a motion in limine. Had the ruling on that motion been correct, the trial strategies resulting in the asserted waiver would not have occurred.

### B. Evidence that Defendant Koew Was Not Injured in Accident

¶ 25 Robinson's final argument is that the trial judge erroneously denied a motion in limine to exclude evidence that Koew, a defendant, was not injured in the accident. Robinson asserts that evidence is not relevant under Rule 402 or, alternatively, is more prejudicial than probative under Rule 403.

¶ 26 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R. Evid. 401. Generally, relevant evidence is admissible and irrelevant evidence is inadmissible. *See* Utah R. Evid. 402. As

noted above, however, relevant evidence can be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403.

¶ 27 This evidence is neither irrelevant nor improperly prejudicial under Rule 403. First, the evidence was relevant. Since defendants conceded liability, the sole issue at trial was the extent of damages stemming from the accident. Whether Koew was injured in the accident is one indicator of the accident's severity. All things being equal,[7] the severity of an accident often correlates with the extent of damages. Thus, evidence concerning the severity of the 1995 accident was relevant, as it had a tendency to suggest the extent of Robinson's damages. *See* Utah R. Evid. 401. While the minor nature of Koew's injuries did not directly prove that Robinson's injuries were also minor, it did have a "tendency to make the existence of [that] fact ... more probable ... than it would be without the evidence." Utah R. Evid. 401. Therefore, it was relevant and admissible under Rule 402.

¶ 28 Second, the evidence was not unfairly prejudicial. Of course, the evidence was prejudicial to some degree. In a broad sense, almost all evidence is. There is little reason to offer evidence if it does not cast doubt on or prejudice the opposing party's position. That is why Rule 403 only precludes evidence *so* prejudicial as to *substantially outweigh* its probative value. If Rule 403 simply prohibited prejudicial evidence, hardly any evidence would be admissible. Thus, plaintiff's bare allegation that evidence

---

5. Although *Green* deals with the collateral source rule, its reasoning is applicable to the instant case. Should the jury be unable to apportion damages, it is instructed to hold defendant liable for all Robinson's injuries, including, necessarily, the preexisting condition. If defendant becomes liable for the 1991 and 1995 injuries, then evidence of disability benefits paid out for the 1991 injuries would amount to a violation of the collateral source rule.

6. Robinson's attorney mentioned the disability benefits during opening arguments, and Robinson testified about them on direct examination.

7. For instance, if Koew were driving a tank and Robinson were riding a bicycle, Koew's lack of injury would not be relevant at all in determining the extent of Robinson's damages. In this case, however, Robinson was in a station wagon while Koew was in a Chevy blazer. Although the two automobiles are different, they are similar enough to make Koew's lack of injury relevant to a determination of Robinson's injuries.

about Koew's lack of injury undermined his damages claim and thereby prejudiced him is not a reason to exclude the evidence. If anything, it supports admitting the evidence. Furthermore, the prejudicial effect of the evidence is no greater than other clearly admissible evidence that tended to show the minor nature of the accident. For example, both parties' accident reconstructionists testified that Koew's Blazer hit Robinson's station wagon at a speed of only 8–13 m.p.h.—a "low-speed" collision in each of their opinions. Defendants' expert testified that the strain of the accident on Robinson's body was likely no greater than the strain normally experienced by any individual on a day-to-day basis. Additionally, Koew testified that, in her recollection, she hit Robinson at only 3 m.p.h., that the impact "felt like a tap" to her, that her seat belt did not lock up, that the impact did not force her forward in her seat, and that her head did not snap backwards and forwards from the impact. Robinson himself testified that the accident did not start a chain-reaction accident with the car stopped only 5 feet in front of him. In fact, he was not aware if his car moved at all. In light of the foregoing, the trial court could well find on retrial, as it ruled below, that this evidence is admissible.

¶ 29   Reversed and remanded for a new trial on damages.

¶ 30   Chief Justice HOWE, Associate Chief Justice DURHAM, and Justice ZIMMERMAN concur in Justice STEWART'S opinion.

RUSSON, Justice, dissenting:

¶ 31   I respectfully dissent. The majority concedes that "the facts of the case must merit the proposed instruction." I do not believe the facts of this case required the court to give the instruction plaintiff Robinson requested. Although Robinson presented evidence that most of his injuries were attributable to the 1995 accident, he failed to present evidence that causation and damages could not be apportioned between the 1995 accident and the 1991 accident.

¶ 32   The majority relies on *Tingey v. Christensen*, 987 P.2d 588 (Utah 1999), which

in turn relied on *Newbury v. Vogel*, 151 Colo. 520, 379 P.2d 811, 813 (1963) (en banc), and its progeny. *Newbury* held that "where a pre-existing ... condition exists, and ... no apportionment of the disability between that caused by the pre-existing condition and that caused by [a later] trauma can be made ... the defendant[ ] whose act of negligence was the cause of the trauma[ ] is responsible for the entire damage." 379 P.2d at 813. In *Tingey*, we stated that the *Newbury* rule, and its attendant jury instruction, was supported by several oft-stated principles:

> [F]irst, a tortfeasor takes a tort victim as he or she finds the victim; second, a tortfeasor should bear the burden of uncertainty in the amount of a tort victim's damages; and third, once the fact of damage is established, "a defendant should not escape liability, because the amount of damage cannot be proved with precision."

*Tingey*, 987 P.2d at 592 (quoting *Winsness v. M.J. Conoco Distrib., Inc.*, 593 P.2d 1303, 1306 (Utah 1979)) (other citations omitted).

¶ 33   Regardless of the general validity of these propositions, I believe *Tingey* (as well as the majority opinion in the instant case) inadequately elucidated all of the pertinent legal principles governing the appropriateness of granting a plaintiff's request for a *Newbury* instruction. The chief pitfall of presenting a jury with a *Newbury* instruction is that it "effectively places the burden on ... defendants to show what portion of the injury predated the accident, as ... failure to do so would allow recovery for the preexisting injury as well as that caused by the defendants." *LaMoureaux v. Totem Ocean Trailer Express, Inc.*, 632 P.2d 539, 543 (Alaska 1981).

¶ 34   In *LaMoureaux*, the Alaska Supreme Court addressed the dilemma of proof presented in preexisting condition cases by comparing those cases with the scenario presented in *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1, 2 (1948) (en banc), wherein two negligent defendants fired birdshot in the plaintiff's direction. In *Summers*, the defendants bore the burden of proof with respect to causation because the plaintiff would otherwise "recover nothing unless he was able to fix the blame on one of the two wrongdoers."

*LaMoureaux,* 632 P.2d at 544. The *LaMoureaux* court observed that causation in preexisting condition cases presents a similar problem because "it is often difficult to determine how much of a plaintiff's injury is due to the preexisting condition and how much to the aggravation caused by the defendant." *Id.* Thus, although "a decision to place the entire liability [for both the current injury and the preexisting condition] on the defendant is an extreme measure" and should be done only when there is no reasonable alternative, *id.* at 545 (citing W. Prosser, *Law of Torts* § 52, at 314 (4th ed.1972)), there are circumstances when it may be more just to do so than to leave an innocent plaintiff with no recovery whatsoever simply because it is difficult or impossible to prove the appropriate degree of apportionment.

¶ 35 Hence, *LaMoureaux* acknowledged that, in circumstances where difficulty of proof exists, the plaintiff may be justifiably "reliev[ed] of proving with great exactitude the amount of aggravation," *id.* at 544; but *LaMoureaux* nevertheless rejected a wholesale shifting in the burdens of proof traditionally borne by plaintiffs. In this regard, the Alaska court noted that there is one critical distinction between the preexisting condition cases and the multiple defendant scenario presented in *Summers:*

> Where two tortfeasors are involved, they presumably can furnish evidence as to their degree of contribution to plaintiff's injury. But, if the plaintiff is suffering from a preexisting injury, he or she is in the best position to furnish information on the degree to which that injury was aggravated by the defendant's acts.

*Id.* at 545. Thus, *LaMoureaux* held that a *Newbury* instruction should be given only after the plaintiff has "come forward with evidence as to an earlier injury" but medical experts are still unable to apportion the amount of aggravation. *Id.*

¶ 36 I agree with *LaMoureaux* and would adopt its reasoning on the basis of its persuasive discussion of the policies that ought to govern jury instructions for apportionment of causation and damages in preexisting injury

cases. I would hold that plaintiffs are not entitled to a *Newbury* instruction unless they have presented competent testimony asserting the impossibility of allocating causation and damages for injury as between the current defendants and preexisting conditions. For example, where a plaintiff presents appropriate evidence of the nature and extent of his or her preexisting conditions, accompanied by expert testimony that no apportionment of causation and damage is possible, the burden properly shifts to the defendant to rebut the plaintiff's testimony and demonstrate that apportionment is in fact possible. In such cases, the plaintiff will have properly met his or her burden regarding the impossibility of apportionment and is entitled to a *Newbury* instruction. The jury can then weigh the evidence presented by each side and—on the basis of competent evidence, not upon the plaintiff's failure to come forward with all the necessary information pertaining to his or her preexisting condition—determine whether apportionment is possible and, if so, what apportionment should be made. Otherwise, the *Newbury* instruction effects an impermissible shifting in the burden of proof without a justifiable evidentiary basis for that shift.

¶ 37 In view of these principles, I do not believe the facts of this case justified a *Newbury* instruction. Although there was conflict in the testimony as to the *degree* of Robinson's injuries that was attributable to the 1995 accident, as distinguished from the 1991 accident, Robinson did not show that it was impossible to apportion causation and damages. Moreover, to the extent Robinson's expert, Dr. Horne, was unable to apportion between the 1991 accident and the 1995 accident, it was due to a *lack* of information, not a professional determination, that no such apportionment could be made.[1] Although Dr. Horne testified he was a member of the Labor Commission and had extensive experience in assessing impairment ratings, he had not examined Robinson extensively enough prior to 1995 to testify as to what level of impairment, or lack thereof, Robinson had suffered as a result of the 1991

---

1. Robinson visited Dr. Horne on two occasions in 1993, almost two years after the accident that

had caused or contributed to his preexisting conditions.

accident. Thus, in this case, Robinson, who was in the best position to provide competent medical testimony as to the possibility of apportioning causation and damages between his two injuries, failed to meet his burden on that issue.

¶ 38 By asserting that the facts of this case justified a *Newbury* instruction, the majority opinion misconstrues the fundamental principles governing the proper treatment of apportionment problems. A *Newbury* instruction should not be mandated whenever there is *any* conflicting evidence regarding the *degree* of apportionment. Rather, a *Newbury* instruction should be mandated only when there is a specific dispute, supported by appropriate evidence, regarding the *possibility* of apportionment. Consequently, the jury was not properly presented with a question as to impossibility of apportionment and a *Newbury* instruction was not merited. I therefore dissent.