**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 8 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALLEN MARSHALL STANDARD,

Plaintiff - Appellee,

v.

UNION PACIFIC RAILROAD
COMPANY, a corporation,

Defendant - Appellant.

No. 00-7083
(D. C. No. 97-CV-537-P)
(E. D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY,** Circuit Judge, **McKAY,** Circuit Judge, and **BROWN**, Senior District Judge.[**]

This is a personal injury action brought by the plaintiff Allen Standard against his employer, the Union Pacific Railroad Company, under the provisions of the Federal Employers' Liability Act (FELA) 45 U.S.C. §§51 et seq. Plaintiff claimed that on November 27, 1996, he sustained a back injury while attempting to repair a ruptured fuel

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

tank on a locomotive which had stopped near Muldrow, Oklahoma, after the train had struck debris on the track.

A jury returned a verdict in favor of plaintiff for $1,300,000. The final judgment was entered by Magistrate Judge James Payne, and defendant Union Pacific Railroad has appealed. We exercise jurisdiction under the provisions of 28 U.S.C. §1291, and affirm.

Background

This case has a past history. Prior to the jury trial and verdict in this case, the railroad had filed a motion for summary judgment, sustained by the trial court on September 17, 1998. In granting the motion, the magistrate judge found there was no evidence that the railroad's conduct played any part in plaintiff's injury. In so ruling, the court determined that all of the elements of common law negligence must be established before there can be liability because the FELA "does not hold railroads strictly liable for an employee's injuries."

The ruling disposing of the case was appealed. On November 2, 1999, the 10th Circuit reversed and remanded the action for trial in an unpublished opinion. Standard v. Union Pacific Railroad, No. 98-7134 (10th Cir. November 2, 1999).[1] In this ruling, we noted that "Standard was injured when he attempted to repair the fuel tank on the locomotive that was in his charge. The fuel tank had been punctured by an object on the

---

[1] The unpublished opinion appears in the Appendix of defendant-appellant, at pp. 000040 et seq.

tracks which later proved to be an angle bar." (Aplt. App. at 41) This angle bar had been placed on the track by a juvenile who had apparently found it nearby. See Ibid, f.n. 1, p. 000004l, Aplt. App.[2]

In reversing, we ruled that "[i]t does not matter that the injuries to the plaintiff were caused by the juvenile placing the angle bar on the track, if the defendant was negligent in the slightest, the matter should still go to the jury. The record before the court shows that there [is] some evidence that the defendant may have been negligent in leaving the angle bar near the track in the first place. Under the FELA this is enough to take the matter to the finder of fact." (citations omitted) (emphasis supplied) (Id. at p. 000044-45, Aplt. App.)[3]

Statement of Issues

In this appeal the defendant presents two issues. In the first instance it claims that the railroad is entitled to judgment as a matter of law under the provisions of Rule 50, Federal Rules of Civil Procedure because the plaintiff "completely failed" to present any evidence of negligence by defendant leading to plaintiff's injury. Defendant further claims that the railroad is entitled to a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure because of several evidentiary rulings made by the trial court.

---

[2] An angle bar is 2 to 3 inches thick and is used to hold two pieces of rail in place. (Aplt. App. at 41).

[3] We noted that there was evidence that the defendant was negligent in having stockpiled railroad maintenance equipment in the area for some time.. Ibid at p. 000045.

<u>The Rule 50 Motion for Judgment</u>

Rule 50 provides for a motion for judgment as a matter of law in jury trials and an alternative motion for new trial:

>    a) <u>Judgment as a Matter of Law</u>.
>
>    (1) <u>If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on</u> that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue. (Emphasis supplied)
>                    * * * *
>
>    (b) <u>Renewing Motion for Judgment After trial</u>: <u>Alternative Motion for New Trial</u>. If, for any reason, the court does not grant a motion for judgment. . . made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion . . . and may alternatively request a new trial under Rule 59. . . .[4]

The standard of review of a denial of a Rule 50 Motion is <u>de novo</u>. In this case, the facts must be viewed in the light most favorable to plaintiff and the Court of Appeals may not weigh the evidence or pass on the credibility of the witnesses, or overturn the

---

[4]  The district court denied the defendant's Rule 50 motions both at the close of plaintiff's case, and the close of all evidence. <u>See</u> Aplt. App. at 385, 395. After the verdict was returned, the defendant filed a Motion for Judgment as a Matter of Law, and/or New Trial, which was denied by the district court. Aplt. App. at 396.

factual conclusions of the jury. See Questar Pipeline Co. v. Grynberg, 201 F. 3d 1277, 1284 (10th Cir. 2000); Deters v. Equifax Credit Information Services, 202 F. 3d 1262, 1268 (10th Cir. 2000).

### Motion for New Trial[5]

The standard of review for evidentiary rulings is based upon a finding of abuse of discretion, and the circuit may not reverse unless it has "a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded bounds of permissible choice in the circumstances." U. S. v. Talamante, 981 F. 2d 1153, 1155 (10th Cir. 1992) (citation omitted), cert. den. 123 L.Ed. 2d 474.

### Motion for Judgment as a Matter of Law

In the first instance, we find that the district court properly denied defendant's Rule 50 Motion for Judgment because there was sufficient evidence to support plaintiff's claim that the railroad was negligent in its duty to provide a safe workplace, and that this negligence proximately led to plaintiff's injury and damage.

As we ruled in the first appeal of this case, negligence and causation is established in an FELA case if the defendant's acts played any part "even the slightest" in producing

---

[5] Rule 59 of the Federal Rules of Civil Procedure governs the issue of new trials:

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

the injury. An employer is required "to make reasonable provisions" against foreseeable dangers, even if those dangers arise from acts of third parties. In this case, there was evidence that the defendant allowed railroad debris and supplies to remain along its tracks; and there was evidence that defendant's work crews had been working on the track near the scene of plaintiff's injury. Defendant was aware that third persons placed debris on the track, causing accidents and it was also aware that a virtually identical incident had occurred in Alma, Arkansas, about six months prior to plaintiff's injury. In each of the two accidents, there was evidence that an angle iron, which was the property of the railroad, had been placed upon the track, rupturing a fuel tank.

With respect to the nature of his injuries and damages, plaintiff offered testimony of various medical experts and treating physicians who found that plaintiff had suffered a herniated disk in the L-3-4-5 regions, which was caused by the fuel leak incident, causing plaintiff pain. There was evidence that plaintiff was treated with electrical shock, medications, a "work hardening program," steroid shots and physical therapy.

We believe there was ample evidence in this case to support a submission to the jury of issues concerning negligence, causation, injury and damages. Under these circumstances, the district court properly denied defendant's motion for judgment as a matter of law.

### Motion for New Trial: Evidentiary Rulings

After this circuit reversed and remanded the case for trial in November, 1999, the

railroad filed a motion in limine to exclude any evidence of a previous fuel tank puncture on defendant's railroad line which had occurred in Alma, Arkansas, in May, 1996, a few months before plaintiff's accident on November 27, 1996. (Aplt. App. at 49). The district court heard arguments at trial, and orally overruled the motion. (Aplt. App. at pp. 230-244; 245).

## The Alma, Arkansas, Incident

In its motion to exclude all evidence pertaining to a ruptured fuel tank incident which occurred on the Union Pacific tracks, the defendant claimed "the mechanism and timing of the Alma incident are far [too] remote from the factual allegations of Plaintiff's case to be of any probative value" and that any reference to it would confuse and mislead the jury. (Aplt. App. at 053). In opposing this motion, plaintiff relied on the Alma incident to establish notice and the foreseeability of harm because a similar accident involving debris on the track and a punctured fuel tank had occurred on the same track about 40 miles away and less than six months before plaintiff's accident. It also appears that a witness, who had lived about 150 yards from the tracks for 13 years, had seen supplies and debris left along the track after work crews had departed. (Applee. App. 20, 21) In addition, the railroad had been doing rail work between Mile Posts 504 and 520 before this time; and the accident happened at Mile Post 513. (Aplt. App. 252-53)

In overruling the motion to exclude evidence relating to the Alma incident, the trial court relied on its similarity to the accident involving plaintiff Allen Standard:

> . . . my ruling is that it is similar because the Alma accident
> happened within a few months' time and it was close in
> proximity. The Alma accident, like the facts in this case,
> involved the puncture of a fuel tank. It was further similar
> because in both incidents the parties agree that the accident
> was caused by vandals placing foreign materials on the tracks.
> There are strong allegations in both incidents that perhaps an
> angle iron was used, Union Pacific Railroad equipment was
> involved in both incidents, that the Court determines that
> they're similar enough to be introduced into evidence to
> determine -- to allow the jury to determine whether this
> incident was foreseeable. . . (Aplt. App. at 245)

The accident which injured plaintiff occurred on November 27, 1996. The incident in Alma took place in May, 1996, when a fuel tank on another locomotive had been punctured by an angle bar placed on the track by a third party. This was about 50 miles from plaintiff's injury. In ruling the evidence would be admitted, the magistrate judge correctly found that the Alma accident was sufficiently similar in time, proximity, and manner of occurrence, to be admitted for the jury's consideration of the issue of negligence and whether the incident involving plaintiff Standard was foreseeable. There was no abuse of discretion in admitting this evidence.

Receipt of Disability/Railroad Retirement Benefits

On March 18, 2000, defendant filed a motion in limine in order to introduce evidence of plaintiff's receipt of disability benefits and/or retirement benefits in an attempt to prove that plaintiff was malingering. After oral arguments on this motion, it was denied. (Aplt. App. at 229, Aplt. App. at pp. 111-14).

The nature of defendant's claim that such evidence would be relevant is expressed

in defendant's argument on the motion in limine asserting plaintiff was clearly a malingerer:

> This case presents that issue perhaps more clearly than any we've had in your court before. Mr. Standard has seen beaucoup doctors. Most of them say he can go back to work. Mr. Standard has testified on his deposition he doesn't want any job except his old job, whether he can do it or not. And I won't belabor the point, but it's clearly a case, in our view, of a plaintiff who doesn't want to work and has no motive to work. And I believe he is getting disability benefits. . . (Aplt. App. at 226)

The trial court ruled that "Third party disability benefits don't come in. You can ask that question. Or let me put it this way, I'll allow you to ask the question. And I'll allow you to object to it. And I'll rule on it at the time, depending on what the context of the — how it's gone. . . " (Applee. App. 14)

The defendant again raised the issue following plaintiff's direct testimony, and a lengthy hearing was held outside the presence of the jury. Defendant asserted plaintiff had "opened the door to testimony of collateral benefits" because he had testified to stress connected with numerous economic worries since his injury.[6] Following a lengthy discussion between the trial court and counsel, the court determined that evidence concerning plaintiff's collateral resources would not be admitted:

---

[6] Prior to further cross examination of plaintiff, the trial court requested counsel for both parties to provide case law in regard to admitting evidence concerning plaintiff's financial situation, in connection with the Supreme Court decision in Eichel v. New York Central Railroad, 375 U.S. 253, 11 L. Ed. 2d 307 (1963).

-9-

The Eichel case has to be the focus of this Court's evaluation in this matter. That's the Supreme Court decision. . . It ultimately comes down a [Rule] 403 evaluation.

I don't find that, under the circumstances, the testimony I've reviewed and hearing arguments of counsel, that the financial condition has been clearly put at issue. . . . It does not appear to me that the financial condition is in issue to the point that I'm willing to find that allowing the evidence has probative value beyond the danger of prejudice.

The Eichel case speaks pretty strong to this Court. . .So with that ruling, we'll. . . proceed. (Applee. App. 71-72).[7]

The Eichel case relied upon by the trial court was brought under the provisions of the FELA by an injured employee of the New York Central Railroad. Eichel v. New York Central R.Co., supra, 375 U.S. 253, 11 L.Ed. 2d 307 (1963). The trial court excluded evidence that the plaintiff was receiving $190 a month in disability pension payments under the Railroad Retirement Act of 1937. The defendant railroad had offered this evidence for the purpose of impeaching the testimony of the plaintiff as to his motive for not returning to work and as to the permanent nature of his injury. The U. S. Court of Appeals for the Second Circuit reversed the trial court, finding that it was prejudicial error to exclude the evidence of the disability pension. In a further appeal, the Supreme Court reversed and remanded the case, finding that the receipt of a disability pension had been properly excluded by the trial court.

---

[7] The trial court allowed the defendant to make an offer of proof on the issue of collateral income. Plaintiff testified that since the incident he had received $16,000 from the defendant, sickness benefits around $1,000 and disability payments of $2,100 per month since May, 1997. (Aplt. App. at 310; Applee. App. at 72.)

. . . . In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act. . . were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act. . . . It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. We hold therefore that the District Court properly excluded the evidence of disability payments. (citations omitted). (11 L.Ed. 2d at 309).

See also, Green v. Denver & Rio Grande Western R. Co., 59 F. 3d 1029 (10th Cir. 1995), cert. den. 133 L.Ed. 2nd 490, where this circuit had occasion to apply the rule and rationale of Eichel and other decisions which had ruled that "collateral source payments are inadmissible as bearing on the extent or duration of disability" (Footnote 5, 59 F. 3d at 1033).[8]

We find that in this case, the district court had broad discretion in making the determination to exclude evidence of collateral payments of benefits to the plaintiff, Allen

---

[8] In Green, the trial court entered judgment on a jury verdict for the defendant, and the plaintiff employee appealed alleging error in the trial court's ruling that his Railroad Retirement Act disability benefits were admissible.

In reversing the ruling admitting this evidence, we found the Eichel case to be controlling since it "compels the conclusion that the collateral source rule prohibits admission of RA disability benefits in a FELA case." 59 F. 3d at 1032.

Standard, and we further find that this discretion was not abused.

<u>Testimony of Dr. Cary Bartlow</u>

On April 18, 2000, defendant filed a motion in limine which concerned the testimony of plaintiff's witness, Cary Bartlow. It was the concern of defendant that this witness would offer medical opinions without proper qualifications. (Aplt. App. at 123). On April 20, 2000, the motion was denied with leave to reargue the matter at trial. (Aplt. App. at 145).

A review of the record supports the finding that Dr. Bartlow possessed all of the credentials for certification as a rehabilitation counselor and evaluation. He was retained to evaluate and give his opinions as to whether plaintiff was employable in the future. He also administered a series of intellectual and aptitude tests and three work sample tests involving dexterity and lifting and carrying tests. At this point in Dr. Bartlow's testimony, the defendant objected to the three work sample tests, claiming they were "functional capacity tests" and could only be administered by medical professionals. (Applee. App. 168, 180)[9]

At this point in the trial, the district court conducted a lengthy hearing outside the presence of the jury and ruled on defendant's objection and the motion in limine to exclude this testimony in the following manner: (The transcript of this hearing appears in

---

[9] These objections were also raised in a Motion in Limine seeking exclusion of Dr. Bartlow's testimony. (App. 124).

Aplt. App. at 334-371, ruling at 371-373).[10]

> Dr. Bartlow I think is a vocational -- an expert in the area of
> vocational rehabilitation. After listening to his answers to my
> questions and answers to questions that counsel propounded.
> .. . I think he's qualified to give an opinion on issues of
> employability. He's not qualified to give medical opinions.
> As a further grid to look at . . . this Court's experience in what
> I think is acceptable for vocational rehabilitation people such
> as Dr. Bartlow. . . the grid generally is a vocational
> rehabilitation person is provided with a body of medical
> evidence. . . And then they take that medical evidence and
> interview--usually there's an interview--a personal interview
> with the person, perhaps the medical reports are talked about.
> . . . But their knowledge, then, of the job markets and what
> physical capabilities it takes to do certain jobs, then result in
> certain findings or opinions as to a number of jobs in the job
> market. . . . their findings are then undergirded with medical
> reports. . . .
>
> * * * *
>
> Based on what I've heard I would have little basis to
> disqualify Dr. Bartlow as an expert in the area of vocational
> rehabilitation.
>
> To the contrary, he has that expertise. To the best of
> my understanding of what plaintiff is attempting to do, he
> hasn't been offered as a medical expert, and I don't find that
> he is a medical expert. (Aplt. App. 371- 372)

Dr. Bartlow then continued his testimony before the jury without further objection.

It was his opinion that plaintiff was not capable of engaging in gainful work activity:

> Q. Can you just outline for the jury what your opinions are
> with regard to Mr. Standard?

---

[10]    During this hearing, the witness Bartlow was present and was questioned by the trial court.

A.  Well, my opinion is based on his disability and the functional limitations that he has with regard to his disability, both mental, physical aptitudes, all of those things considered together, that he couldn't sustain or tolerate or endure a workday in, day out eight hours a day, 40 hours a week, every single day, he would not be able to do it, in my opinion; and that, therefore, is my opinion, that he has a total loss of earning capacity, that he's not capable in engaging in gainful work activity. (Applee. App. 210-211; Aplt. App 376-377).

In this appeal, defendant continues to attack Bartlow's qualifications as well as his credibility.  The railroad erroneously contends that Dr. Bartlow's testimony contradicts "the testimony provided by every physician who testified."  Plaintiff had a number of medical witnesses.  Dr. Schoedinger, his orthopedic physician testified regarding pain and inability to work with pain, noting that if plaintiff's job involved bending or twisting, he would advise his patient not to return to work.  Dr. Florian, a treating physician testified plaintiff would have permanent pain and that he has a permanent disability which is likely to need surgery in the future.  He set a 20-pound lifting restriction for plaintiff.  Dr. Florian also testified that plaintiff suffered from depression which would be a real problem in his ability to be employed.

The plaintiff, and all of plaintiff's medical experts were subject to extensive cross examination by defendant's counsel.  The credibility of Dr. Bartlow and all other witnesses and the weight to be given to their testimony were matters for jury determination.

The district court properly exercised its discretion in qualifying Dr. Bartlow as an

-14-

expert in vocational rehabilitation. During the trial, defendant did not attempt to challenge Dr. Bartlow's testimony under <u>Daubert v. Merrell Dow Pharm., Inc.,</u> 509 U.S. 579, 125 L.Ed. 2d 469 (1993), or in its motion in limine. The district court was not convinced that the issue was a <u>Daubert</u> challenge, and defendant did not argue at trial that the tests conducted by Dr. Bartlow were not relevant or reliable tests. During the hearing on the question outside the presence of the jury, it clearly appears that the district court thoroughly inquired into the basis of Dr. Bartlow's opinion, was satisfied that the tests used by Dr. Bartlow were commonly recognized and used by rehabilitation counselors, and the tests were not created for purposes of litigation or specifically for plaintiff's use. (Applee. App 182, 186).

The court finds that the trial court did not abuse its discretion in admitting the testimony of Dr. Bartlow as a vocational rehabilitation expert. As noted, the credibility and weight of his testimony is to be determined by the jury.

## Conclusion

The court finds that <u>there was</u> a "legally sufficient evidentiary basis for a reasonable jury"[11] to render a verdict for plaintiff in this case, and the trial court properly denied defendant's Rule 50 motion for judgment. We further find that the trial court did not abuse its discretion in any instance in its rulings on evidentiary matters, as discussed above, and the trial court properly denied defendant's alternative motion for new trial.

---

[11] <u>See</u> Rule 50, Fed.R.Civ.Proc., quoted <u>supra.</u>

-15-

The judgment of the district court is AFFIRMED.

Entered for the Court,


Wesley E. Brown
Senior District Judge